2001 UT 96

**Douglas Stewart CARTER, Petitioner and Appellant,**

v.

**Hank GALETKA, Warden, Utah State Prison, Respondent and Appellee.**

**No. 20000145.**

Supreme Court of Utah.

Nov. 6, 2001.

Rehearing Denied Feb. 25, 2002.

Bradley P. Rich and Jack M. Morgan, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Asst. Att'y Gen., Salt Lake City, for respondent.

WILKINS, Justice:

¶ 1 Petitioner Douglas Stewart Carter appeals the district court's dismissal of his second amended petition for a writ of habeas corpus and post-conviction relief. We affirm.

## BACKGROUND

¶ 2 For a complete recitation of the facts in this case see *State v. Carter,* 888 P.2d 629, 633–37 (Utah 1995) (*Carter II* ). Carter was convicted of murder in the first degree, a violation of section 76–5–202 of the Utah Code, and sentenced to death in December 1985. Carter appealed, raising several issues. The American Civil Liberties Union (ACLU) filed an amicus curiae brief, expanding on the issues Carter raised and raising several additional issues. On direct appeal, this court affirmed Carter's murder conviction but vacated the death sentence. *State v. Carter,* 776 P.2d 886, 895–96 (Utah 1989) (*Carter I* ). On remand in January 1992, Carter was again sentenced to death, and in January 1995, this court affirmed the death sentence imposed at the 1992 penalty hearing. *State v. Carter,* 888 P.2d 629, 633 (Utah 1995) (*Carter II* ), *cert. denied, Carter v. Utah,* 516 U.S. 858, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995).

¶ 3 Carter filed a pro se application for a writ of habeas corpus and post-conviction relief with the district court in October 1995. In December 1995, four attorneys undertook representation of Carter and filed an amend-

ed petition in February 1996. In 1997, the legislature enacted section 78–35a–202, which permits state-funded counsel to be appointed by the court for indigent defendants in post-conviction cases involving a death sentence. *See* Utah Code Ann. § 78–35a–202 (Supp. 2000). In October 1997, Carter requested that current counsel be appointed to represent him, and the district court granted Carter's motion. Carter's second amended petition for habeas corpus and post-conviction relief was prepared by appointed counsel and filed in July 1998.

¶ 4 In his second amended petition, Carter asserted nearly fifty allegations of error, each with numerous subparts. The district court thoroughly reviewed the allegations and then dismissed Carter's petition. In its detailed written ruling, the district court addressed each of Carter's allegations. The court dismissed the majority of Carter's claims as procedurally barred. The court analyzed and dismissed the remainder of Carter's claims on their merits. Carter appeals.

## ANALYSIS

¶ 5 Because Carter's petition contains many allegations, we reiterate at the outset that although this court reviews and decides each of the allegations of error raised in a death penalty case, the court "need not analyze and address in writing each and every argument, issue, or claim raised." *Carter I*, 776 P.2d at 888. Our decision not to address in writing certain issues is in no way a reflection upon counsel's presentation of the case. We acknowledge, as the district court pointed out, that counsel in this case has undertaken a masterful effort in presenting the issues for review by the court. However, if an issue raised depends upon essential principles that have already been established, we may well omit discussion of that issue. "Use of this rule in capital punishment . . . cases continues to be appropriate and important in . . . enabling this Court, after fair and comprehensive review, to expeditiously focus judicial resources and energy on those critical or outcome-determinative issues . . . ." *Id.* at 889.

## I. CLAIMS PROCEDURALLY BARRED

¶ 6 A petition for habeas corpus is a collateral attack of a conviction and/or sentence and is not a substitute for direct appellate review. *Gardner v. Holden*, 888 P.2d 608, 613 (Utah 1994). As a result, issues raised and disposed of on direct appeal of a conviction or sentence cannot be raised again in a petition for habeas corpus. *Id.* Such issues are dismissed as an abuse of the writ, without a ruling on the merits. *Id.* Additionally, issues that could and should have been raised on direct appeal, but were not, may not be raised for the first time in a habeas corpus proceeding, absent unusual circumstances. *Id.; see also, e.g., Fernandez v. Cook*, 783 P.2d 547, 549 (Utah 1989); *Codianna v. Morris*, 660 P.2d 1101, 1104–05 (Utah 1983).

¶ 7 The district court dismissed the majority of Carter's claims because they had been previously raised, either by Carter or the amicus curiae, or they were issues that could and should have been raised on direct appeal and there were no unusual circumstances justifying Carter's failure to do so. We agree with the district court's conclusion that the following claims are procedurally barred.

### A. Claims Raised on Direct Appeal by Carter

¶ 8 The following claims are procedurally barred because they were previously raised on direct appeal by Carter in *Carter I* or *Carter II:* (1) Counsel during the 1985 trial was ineffective for (a) failing to seek any pretrial discovery from the State, (b) failing to conduct any investigation into the crime, and (c) failing to request appointment of a psychiatric expert to assist in Carter's defense. (2) The trial court during the 1992 penalty hearing failed to remove for cause biased and incompetent members of the venire panel. (3) The trial court during the 1992 penalty hearing admitted into evidence the abstract of testimony from the first trial, which denied Carter's right to confront and cross examine the witnesses against him. (4) The trial court erred in denying Carter's motion for a change of venue. (5) The trial court refused to suppress Carter's state-

ments to police; despite the fact that police officers allegedly used questionable means to obtain the statements. (6) The prosecution in Carter's 1985 trial engaged in misconduct by (a) improperly commenting on Carter's right to remain silent, (b) improperly vouching for a witness during his closing argument, (c) improperly interfering with the attorney-client relationship between Carter's wife and her attorney, and (d) improperly, and without authorization, granting immunity to Carter's wife. (7) The trial court during the 1992 penalty hearing improperly admitted prejudicial victim impact evidence. (8) The trial court failed to instruct the jury that they must vote unanimously as to the aggravating circumstance. (9) Carter was denied a fair sentencing determination because the guilt phase and first penalty hearing were not bifurcated. (10) The trial court during the 1992 penalty hearing submitted an aggravating circumstance to the jury that was not supported by sufficient evidence. (11) The Utah Supreme Court improperly applied the harmless error analysis to the admission of the victim impact evidence at the 1992 sentencing hearing. (12) The Utah Supreme Court acknowledged errors in the 1992 penalty hearing, yet the court refused to find that Carter was prejudiced based on the cumulative effect of the errors. (13) Carter was subjected to double jeopardy because evidence was admitted during the penalty phase regarding the rape or attempted rape charges, after the jury, during the guilt phase, found Carter not guilty of those charges. (14) Carter was denied adequate appellate review because the jury was not required to submit a special verdict form finding each aggravating circumstance beyond a reasonable doubt. (15) There is an unconstitutional conflict between two subsections of 76-3-207 of the Utah Code. (16) The trial court prejudicially instructed the jury on crimes that had not been charged in the Information.

¶ 9 Because the above-listed claims were previously raised on direct appeal by Carter in either *Carter I* or *Carter II*, they are subject to the procedural bar and were properly dismissed by the district court in the habeas proceeding. We do not consider their merits.

### B. Claims Raised in Amicus Brief in Carter I

■ ¶ 10 On direct appeal in *Carter I*, the ACLU filed an amicus curiae brief, expanding on the issues raised by Carter and raising a number of additional issues. In Carter's petition for habeas corpus he attempts to re-argue some issues relating to the alleged ineffectiveness of trial counsel raised by the ACLU in *Carter I*. However, because these issues were raised and decided on direct appeal, they are procedurally barred and may not be raised again in Carter's habeas petition. The following is a list of these issues: (1) Trial counsel was ineffective for (a) not investigating the circumstances under which Carter confessed to the crime, (b) not being familiar with Utah law, (c) not presenting evidence to support Carter's motion for a change of venue, (d) failing to cross-examine the State's medical expert, (e) presenting no defense on Carter's behalf, and (f) failing to object to the jury instructions.

■ ¶ 11 Carter asserts that these issues cannot be treated as previously raised and disposed of because Carter did not raise them himself. He claims that the issues raised by the ACLU cannot be attributed to him because an amicus curiae cannot extend or enlarge the issues on appeal. Carter further argues that the above-listed issues are not procedurally barred because this court did not specifically address these issues in its opinion in *Carter I*.

¶ 12 We find Carter's argument to be without merit for two reasons. First, after the ACLU filed its amicus brief, Carter filed a second supplemental brief in which he specifically adopted the arguments made by the ACLU regarding the alleged ineffectiveness of trial counsel. In Carter's second supplemental brief, he stated, "This brief supports totally the arguments of amicus curiae as regards [the ineffectiveness of trial counsel] issue and wishes to emphasize that the inadequacies noted in that brief are not matters involving tactical decisions but products of an obviously apparent failure to prepare." Because Carter himself adopted the issues raised by the amicus and placed before the

court in *Carter I,* these issues are properly attributable to him and are considered previously raised and ruled upon for the purposes of Carter's habeas petition.

¶ 13 Second, Carter's argument that the issues raised in the amicus brief are not barred because this court did not specifically address them in its opinion in *Carter I* is also without merit. In *Carter I,* we stated, "after fully reviewing *every* claim raised in the instant case, we discuss at length only those issues critical to this appeal." 776 P.2d at 889 (emphasis added and footnote omitted). As we explained, every claim raised—whether raised by Carter, the State, or the amicus curiae—was reviewed and decided by the court. Therefore, the issues previously raised in the amicus brief in *Carter I* are subject to the procedural bar because they have been previously raised and ruled upon.

### C. Claims That Should Have Been Raised On Direct Appeal

¶ 14 In Carter's petition for habeas corpus, he raises a number of issues that could and should have been raised on direct appeal in *Carter I* or *Carter II.* As the district court pointed out in its ruling, it appears that "Carter scoured the record searching for technical error for this collateral attack." However, a habeas proceeding is not a substitute for, or a second chance at, appellate review. Habeas corpus is an extraordinary remedy; if the contention of error is known or should have been known to the petitioner at the time of judgment, it must be raised and appealed through the regular and prescribed procedure, otherwise the regular rules of procedure governing appeals would be nullified. *Codianna,* 660 P.2d at 1101 (quoting *Brown v. Turner,* 21 Utah 2d 96, 98–99, 440 P.2d 968, 969 (1968)). Accordingly, "issues that could and should have been raised on direct appeal, but were not, may not properly be raised in a habeas corpus proceeding, absent unusual circumstances." *Gardner,* 888 P.2d at 613. We therefore conclude that the following claims are procedurally barred because they are claims that could and should have been raised in direct appeal, and there are no unusual circumstances justifying Carter's failure to do so: (1) Out-of-state trial counsel [1] was ineffective for (a) failing to adequately consult with Carter before the trial, (b) being the subject of numerous bar complaints, (c) failing to timely object to a witness's testimony that was given half in English and half in Spanish, (d) failing to preserve for appeal his attempt to cross examine the victim's husband, (e) failing to investigate the crime to discover evidence that may have assisted Carter's defense,[2] (f) not probing the prosecution witnesses as to why no forensic evidence was introduced, (g) stating in his closing argument that if "we" sentence Carter to death "we sink to his level," (h) not preparing questions to ask the jury during voir dire, and (i) failing to argue that the Information charging Carter with capital homicide was defective. (2) Local trial counsel was ineffective for failing to assist Carter's attorney from Illinois in any meaningful way. (3) The trial court in the second penalty hearing erroneously passed for cause a juror who demonstrated bias. (4) The prosecution withheld evidence that was favorable to Carter. (5) The jury instructions during the original trial and the 1992 penalty hearing failed to properly convey the concept of reasonable doubt to the jury. (6) The trial court in the second penalty hearing failed to answer a question from the jury regarding the appropriateness of the death penalty. (7) The trial court denied Carter the right to confront a witness by allowing the witness to begin his testimony in English and then switch to Spanish

---

1. During Carter's original trial he was represented by an attorney from Illinois and a local attorney who was assigned to help out-of-state counsel with the case. Claims (1)(a)–(i) relate to the alleged ineffectiveness of Carter's attorney from Illinois, and claim (2) relates to the alleged ineffectiveness of local counsel.

2. Carter claims that counsel failed to conduct adequate investigation because counsel did not (1) focus on the victim's husband as a suspect, (2) discover that there was blood on a towel in the victim's bathroom, (3) explore an earlier police suspect, (4) discover that no blood was found on Carter's clothes, and (5) discover that a hair, of origin of a different race or ethnic group, was found at the victim's house.

and use an interpreter during a crucial part of his testimony. (8) The prosecutor during the original trial engaged in misconduct by (a) withholding evidence favorable to the defense, (b) mischaracterizing the reasonable doubt standard, and (c) instructing the jury that it need not look at the not guilty option on the verdict form. (9) The prosecutor during the 1992 penalty hearing engaged in misconduct by (a) commenting on the impact alcohol use would have had on Carter, and (b) turning the use of alcohol into an aggravating factor instead of a mitigating one. (10) The death penalty statute unconstitutionally shifts the burden of proof to a defendant to prove his/her life should be spared. (11) The trial court's jury instructions in the 1992 penalty hearing improperly limited the jury's consideration of mitigating factors. (12) The trial court in the 1992 penalty hearing improperly instructed the jury that it could not reconsider the presence or absence of the aggravating circumstance of aggravated burglary. (13) The trial court in the 1992 penalty hearing failed to adequately instruct the jury on the definition and use of mitigating circumstances. (14) The aggravating circumstance in section 76–5–202(1)(q), that the homicide was committed in an especially heinous, atrocious, cruel or exceptionally depraved manner, is unconstitutionally vague and overbroad. (15) The death penalty scheme is unconstitutional because it permits the jury to consider any fact in aggravation of the crime. (16) The death penalty scheme is unconstitutional because it creates a presumption that death is the appropriate penalty. (17) The death penalty scheme unconstitutionally allows the introduction of any evidence deemed to have probative value. (18) The trial court in the 1992 penalty hearing failed to bifurcate the guilt phase proceedings. (19) The prosecution failed to provide Carter with sufficient notice of the charges against him. (20) Carter was denied due process because the trial court did not conduct all of the proceedings on the record. (21) The trial court during the 1992 penalty hearing violated Carter's equal protection rights because it did not inform the jury that the death penalty is the "exception" rather than the "rule." (22) The trial court during the second penalty hearing precluded members of the community who were prone to imposing a life sentence thereby creating a "death qualified jury." (23) The death penalty scheme is unconstitutional because it fails to narrow the class of persons eligible to receive the death penalty. (24) The trial court in the 1992 sentencing hearing failed to give an instruction regarding the possibility of parole. (25) The jury instructions during the 1992 penalty hearing presented an unacceptable risk that the jury would not fully consider the mitigating circumstances. (26) Carter was denied the right to trial by an impartial jury of his peers. (27) The trial court failed to instruct the jury on the required elements of aggravated burglary.

¶ 15 We conclude that these issues are subject to the procedural bar; they could have and should have been raised on direct appeal, and petitioner has not presented unusual circumstances as to why they were not. As we have previously explained, if "the contention of error is something which is known or should be known to the party at the time the judgment was entered, it must be reviewed in the ... regular prescribed procedure, or the judgment becomes final and is not subject to further attack, except in unusual circumstances." *Brown v. Turner*, 21 Utah 2d 96, 98, 440 P.2d 968, 969 (1968). To demonstrate unusual circumstances, a petitioner must show that there was "an obvious injustice or a substantial and prejudicial denial of a constitutional right...." *Hurst v. Cook*, 777 P.2d 1029, 1035 (Utah 1989).

¶ 16 We have examined the merits of the above-listed claims to determine whether Carter has satisfied the unusual circumstances test. He has not. After carefully reviewing each of these claims we conclude that Carter has suffered no obvious injustice or a substantial and prejudicial denial of his constitutional rights. Accordingly, we conclude that these issues are procedurally barred.

## II. CLAIMS REVIEWED ON MERITS

¶ 17 We review the following claims on their merits for one of two reasons: either

the habeas corpus proceeding is the first proceeding—the regular and prescribed procedure—in which the claims could have been raised; or due to the nature of the allegation being raised for the first time in the petition, and given the grave and irrevocable nature of the death penalty, we examine them to ensure that substantial justice is done. *See, e.g., Codianna v. Morris*, 660 P.2d 1101, 1114–16 (Utah 1983) (Stewart, J., concurring in result) (discussing cases in which courts have addressed the merits of petitioners' claims even when the claims were known or should have been known and subject to the procedural default in order to ensure fundamental fairness and substantial justice).

### A. Juror Misconduct in 1992 Penalty Hearing

¶ 18 We review this allegation on the merits to ensure that substantial justice is done. *See, e.g., Codianna*, 660 P.2d at 1114–16 (Stewart, J., concurring in result). Carter argues that he was denied the right to a fair trial and an impartial jury during the second penalty hearing because after Carter's psychiatric expert testified, the jury consulted a dictionary that one of the jurors had with him to define a term used by the expert. As support for this claim, Carter submitted an affidavit signed by a member of the jury. The affidavit states that the court bailiff observed the jury consulting the dictionary, reported the incident to the trial judge, and informed the jury that he had spoken to the judge about the incident. The trial judge instructed the jury that consultation of external material was inappropriate. Counsel was not notified, nor was any further action taken by the judge.

¶ 19 Taking the allegations in the petition as true, the district court determined that, at most, the misconduct by the jury was harmless. The district court acknowledged that consulting a dictionary is an inappropriate reference to extra-judicial sources, yet the court also found that there was no evidence that the consultation "caused any juror to so focus his/her views as to constitute a prejudice."

¶ 20 We agree with the district court's findings. Carter was constitutionally entitled to a jury uninfluenced by external sources. However, in order for Carter to show that his constitutional rights were violated, he must show that he was prejudiced by the incident. *See, e.g., State v. Donald*, 90 Utah 533, 537–38, 63 P.2d 246, 248 (Utah 1936). Carter has failed to do so. He has presented no evidence regarding what word was looked up in the dictionary or how the incident impacted the jury's deliberations, let alone any evidence as to how the incident created a jury that was not impartial. Therefore, we affirm the district court's dismissal of this claim.

### B. Expert's Conflict of Interest

¶ 21 We review this allegation on the merits to ensure that substantial justice is done. *See, e.g., Codianna*, 660 P.2d at 1114–16. In Carter's petition, he asserts that the mental health expert, Dr. Robert Howell, who presented mitigation evidence on Carter's behalf at the 1992 penalty hearing, had "an insurmountable conflict of interest" that deprived Carter of his constitutional rights. In 1985, shortly after the crime, Dr. Howell prepared a psychological profile of the not-yet-identified perpetrator of the crime. Carter argues that his constitutional rights were violated because Dr. Howell did not disclose this to him before he testified on Carter's behalf in 1992. Carter also alleges that Dr. Howell was not qualified to examine him and that Dr. Howell's examination and evaluation of him were wholly inadequate.

¶ 22 The district court dismissed this claim, finding that at most, Dr. Howell's conflicted status was harmless error. The district court pointed out that Dr. Howell was amply qualified to testify as a mitigation witness on Carter's behalf. He had distinguished training, expertise, and experience in forensic psychology. Furthermore, Dr. Howell's "evaluation, examination, and mitigation testimony were significant, helpful and entirely appropriate." Dr. Howell addressed Carter's alleged organic cerebral dysfunction, a head injury he suffered as a child, his history of alcohol and drug abuse, and his lack of a consistent father figure. As for Dr. Howell's conflict of interest, the district court explained that Dr. Howell should have dis-

closed his prior involvement in the case to Carter, and that his failure to do so may have been a violation of professional psychiatric standards; however, the court found Dr. Howell's mitigation testimony entirely appropriate and his failure to disclose his prior involvement to be of no legal consequence.

¶ 23 The district court was correct in dismissing this claim. Although Dr. Howell should have disclosed his prior involvement with the case, Carter has demonstrated no prejudice that resulted from his failure to do so. Carter has not shown that there was other mitigation evidence that a conflict-free expert would have discovered and attested to at trial. As the district court found, Dr. Howell presented appropriate mitigation testimony. Because Carter has presented this court with nothing that shows that there is a reasonable probability of a different outcome had a conflict-free expert provided mitigation testimony, we conclude that the district court properly dismissed this claim.

### C. Application of State v. Menzies in Carter II

¶ 24 We address these allegations of error in *Carter II* on their merits because these claims could only have been raised for the first time in a petition for a writ of habeas corpus. In his petition for habeas corpus, Carter argued to the district court[3] that this court improperly applied *State v. Menzies*, 889 P.2d 393 (Utah 1994) in *Carter II*. On appeal in *Carter II*, Carter argued that his second death sentence should be reversed because during the 1992 penalty hearing he was forced to use peremptory challenges to remove three prospective jurors that the court should have removed for cause. As support for his argument, Carter relied on *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975), the law at the time, which required reversal in cases where the trial court erred in refusing to dismiss a juror for cause and the defendant had to use a peremptory challenge to remove that juror. In *Carter II*, this court did not apply the automatic reversal rule of *Crawford*, but rather we applied the newly articulated rule of *Menzies*, which required the defendant to show

that the jury that sat in the defendant's case was incompetent or partial before reversal was warranted. *Carter II*, 888 P.2d at 649. Applying the rule of *Menzies* in *Carter II*, we held that defendant had not shown that the jury that sat in his case was partial or biased, therefore, there was no reversible error. *Id.* We did not address whether the trial court erred in refusing to remove the jurors.

¶ 25 In his petition for habeas corpus, Carter alleged that this court erred in retroactively applying *Menzies* to his case because the law at the time of his 1992 sentencing hearing was the automatic reversal rule of *Crawford*. Analyzing the merits of this claim, the district court concluded that Carter had failed to show that he was prejudiced by the retroactive application of *Menzies* and dismissed this allegation.

¶ 26 The district court properly dismissed this claim. Carter's argument that the rule of *Menzies* should not be retroactively applied has been previously raised and rejected by this court. In *State v. Saunders*, 1999 UT 59, 992 P.2d 951 (Utah 1999), the defendant argued that the rule of *Menzies* should not apply to his case because *Menzies* was decided after the defendant's trial. We specifically rejected the defendant's argument, stating, "We now explicitly hold that *Menzies* applies both prospectively and retrospectively." *Id.* at ¶ 54. In so holding we explained that the "long-standing traditional rule is that the law established by a court decision applies both prospectively and retrospectively, even when the decision overrules prior case law. Only if retrospective application of a decision creates 'a substantial injustice' will a court limit a new decision to prospective application." *Id.* at ¶ 53 (citing *Heslop v. Bank of Utah*, 839 P.2d 828, 835 (Utah 1992)). In *Saunders*, we found that no substantial injustice was created by the retroactive application of *Menzies* because "pre-*Menzies* law was a procedural rule only" and therefore "there was no detrimental reliance on it." *Id.* at ¶ 54.

¶ 27 As in *Saunders*, Carter has not shown that a substantial injustice was created by our application of the *Menzies* rule to his

---

**3.** More properly, this should have been raised in a petition for rehearing before this court.

case. Carter claims that a substantial injustice was created because he relied on the automatic reversal rule of *Crawford* during the 1992 penalty hearing. However, this argument fails because Carter cannot show that his reliance on *Crawford* affected his decisions regarding jury selection at the 1992 penalty hearing in any way. During that hearing, Carter's counsel challenged the three jurors for cause and then used peremptory challenges to strike them when the for-cause challenges were denied by the court. Thus, none of the jurors Carter challenged sat on the jury. The fact that Carter thought he would be granted a new penalty hearing because he believed the trial court erred in failing to dismiss the jurors for cause does not amount to a substantial injustice.

¶ 28 Carter also argues that a substantial injustice was created because, in his brief before this court in *Carter II*, he argued for reversal under the automatic reversal rule of *Crawford,* and he was not given the opportunity to argue the merits under *Menzies.* This argument also fails. First, in the State's brief in *Carter II,* the State urged this court to overturn *Crawford* and adopt the rule later set forth in *Menzies.* Thus, Carter had the opportunity to address application of a *Menzies*-type rule to his case in his reply brief, and he took advantage of this opportunity, addressing this argument in his reply brief.

¶ 29 Because Carter has failed to show that a substantial injustice was created by the retroactive application of the *Menzies* rule to his case, we affirm the district court's ruling dismissing this claim.

### D. *Ineffective Assistance of Counsel*

 ¶ 30 Carter's petition also makes numerous allegations of ineffective assistance of counsel. The district court reviewed several of these claims on the merits and concluded that the claims should be dismissed. We review these allegations on the merits to ensure that substantial justice is done. *See, e.g., Codianna,* 660 P.2d at 1114–16.

¶ 31 Before addressing the specific claims, we point out that in order for Carter to succeed on an ineffective assistance claim,

Carter must meet both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As formulated by this court, that test is: "To prevail, a defendant must show, first, that his [or her] counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah 1994) (quoting *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988)). To demonstrate prejudice, Carter must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also, e.g., Parsons,* 871 P.2d at 522.

¶ 32 The following ineffective assistance claims are reviewed on the merits: (1) Trial counsel in the 1992 penalty hearing was ineffective for (a) failing to adequately investigate available mitigating evidence, (b) failing to hire a mitigation expert to investigate Carter's background to present to the jury, (c) failing to object to the trial court's failure to give part of the instructions contained in section 76–3–207(2) of the Utah Code, thus omitting the statutory mitigators related to duress or the involvement of other persons, and (d) passing a juror, Nelson, for cause after the juror stated that he subscribed to the doctrine of blood atonement and he believed in the mark of Cain. (2) Appellate counsel in *Carter I* was ineffective for (a) failing to argue that the jury instruction addressing reasonable doubt was improper, (b) failing to raise the fact that the prosecution withheld material evidence from Carter, (c) failing to argue that Carter had been denied a psychiatric expert, (d) failing to assure the existence of a complete record, (e) failing to argue that the Information charging Carter was defective, and (f) failing to argue that trial counsel was ineffective. (3) Appellate counsel in *Carter II* was ineffective for (a) failing to move for a Rule 23B remand hearing to establish facts relating to a claim for

ineffective assistance of trial counsel, and (b) failing to raise the issues Carter now raises in his petition for habeas corpus.

1. Trial Counsel at 1992 Penalty Hearing

¶ 33 The district court thoroughly analyzed the merits of each of Carter's claims of ineffective assistance relating to his 1992 penalty hearing counsel. With respect to claims (1)(a) and (b), which assert that counsel was ineffective for failing to adequately investigate available mitigating evidence and for failing to hire a mitigation expert, the district court found that counsel's performance was not deficient in any manner as counsel had presented a substantial amount of mitigation evidence on Carter's behalf. The court explained that counsel presented evidence of Carter's troubled childhood, his failed marriage, a head injury that may have caused brain dysfunction rendering him more prone to violence, particularly when under the influence of alcohol, and the love Carter and his family share with one another. The district court also pointed out that Carter had not shown what additional evidence was available to present to the jury.

¶ 34 We agree with the district court's analysis of this issue. Carter has failed to demonstrate that counsel's performance, relating to the mitigation evidence provided, was deficient and fell below an objective standard of reasonable professional judgment.

¶ 35 As to claim (1)(c), Carter's claim that counsel was ineffective for failing to object when the trial court omitted two statutory mitigators in its mitigation instruction, the district court dismissed the claim after finding no evidence to support the inclusion of the omitted mitigators in the instruction. The omitted statutory mitigators relate to a finding by the jury that the "defendant acted under extreme duress or under the substantial domination of another person," and that "the defendant was an accomplice in the murder committed by another person and his [or her] participation was relatively minor." Utah Code Ann. § 76–3–207(2)(c), (f) (1990). As the district court explained, the guilt phase jury concluded that Carter was the lone assailant in the murder and there was no evidence that he was under the domination of another person when he committed the murder. Therefore, counsel's failure to object to the court's decision not to provide the instruction when there was no evidence to support the instruction being given does not constitute deficient performance. The district court correctly dismissed this claim.

¶ 36 Carter also alleged, in claim (1)(d), that his 1992 penalty hearing counsel was ineffective for passing juror Nelson for cause. Carter argues that trial counsel should have challenged juror Nelson because he responded to the jury questionnaire by stating (1) that he believed in "blood atonement," which he defined as: "[i]f you take a life, you must pay for it with your life"; (2) that he believed in the religious "Curse of Cain" doctrine and defined it as a curse of "dark skin for Cain killing Able [sic]"; and (3) that he believed racial minorities were more likely than Caucasians to commit violent crimes because he believed racial minorities are more prone to live in poverty. In answering the question regarding whether he had any negative feelings or felt any resentment toward people who are accused of or are convicted of a crime, Nelson circled both the yes and no options, explaining his answer was yes, he would have negative feelings toward a defendant "if convicted of major crimes."

¶ 37 During voir dire of juror Nelson, Nelson also told the court that his belief in "blood atonement" would not lead him to impose an automatic death sentence and that his belief in the "mark of Cain" did not have anything to do with the case, even though the defendant is African-American. Nelson explained his comment that racial minorities were more prone to commit violent acts by saying:

> Well, I think that those that are in poverty situations are more prone to be involved in drugs and crime and that type of thing. And that could be white people in a, you know, in an area, black people in an area. I think if they are, both don't have some of the same chances that other people do that are a little more well to do, then I think

those people are more prone to crime and probably more prone to violen[t] crimes. Regarding the comment that he had strong feelings towards those who are convicted of major crimes, Nelson said:

> Well, I'm kind of thinking in the middle there, there [are] sometimes where you know more about it and a situation where you definitely have more feelings than you have bad feelings against it, or if it's somebody that you don't know or you don't know really the circumstances around it, then I probably wouldn't have feelings or serious feelings about that, it's more of knowledge I have to that crime or the person committing the crime.

Finally, Nelson affirmed that the fact that Carter had been convicted did not cause him to make any prejudgment about the sentence he should receive.

¶ 38 After the court, counsel for Carter, and the State finished questioning Nelson, Nelson was passed for cause. In Carter's petition for habeas corpus, he alleges that trial counsel was ineffective for failing to challenge Nelson. The district court analyzed the merits of this claim and concluded that counsel's performance in passing Nelson for cause was not outside the realm of appropriate trial strategy. The court pointed out that counsel had the "opportunity to observe the demeanor, attitudes and beliefs of Juror Nelson" and to "make a direct, informed decision" not to challenge him. The district court therefore dismissed this claim.

¶ 39 As explained above, in order to prove ineffective assistance of counsel, Carter must show (1) that counsel's performance fell below an objective standard of reasonable professional judgment, and (2) that the deficient performance was prejudicial, i.e., that it affected the outcome of the case. *See Strickland*, 466 U.S. at 687, 694, 104 S.Ct. 2052. We hold that the district court correctly dismissed Carter's claim that his 1992 penalty hearing counsel was ineffective for passing Nelson for cause because Carter has failed to satisfy either prong of the *Strickland* test.

¶ 40 To satisfy the first prong of the *Strickland* test, Carter must rebut the strong presumption that "under the circumstances, the challenged action 'might be con-sidered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S..91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In the context of jury selection, this is a difficult task because "the *Strickland* standard requires the appellate court to make two distinct presumptions when trial counsel does not object to, or remove, a particular juror." *State v. Litherland*, 2000 UT 76, ¶ 20, 12 P.3d 92. The first presumption is that counsel's decision not to challenge a particular juror is presumed to be a conscious choice or preference. *Id.* Second, because the process of jury selection is a highly subjective, judgmental, and intuitive process, counsel's strategic choice to refrain from objecting to a juror is presumed to constitute effective assistance. *Id.*

¶ 41 These presumptions are appropriate in this context given the inexact nature of the jury selection process. "There are a multitude of inherently subjective factors typically constituting the sum and substance of an attorney's judgments about particular jurors." *Id.* at ¶ 19. Each trial attorney has his or her own unique strategy in determining which prospective jurors they would like to sit on the jury, and when an appellate court reviews an attorney's decisions made during the jury selection process, the appellate court is presented only with the bare transcript. The appellate court does not have the benefit of observing the juror's demeanor, personality, or interaction with others. Furthermore, certain decisions by counsel may even appear counterintuitive. "For instance, an attorney may make a reasoned judgment that a prospective juror's consciousness of, and concern for, his or her own potential bias actually provides a more sure foundation for confidence in that juror's reasoning processes." *Id.* at ¶ 22.

¶ 42 For these reasons, we have noted that appellate review of the strategic decisions of counsel during jury selection "becomes an inherently speculative exercise." *Id.* at ¶ 24. As such, to rebut the presumption of effectiveness, the defendant must show:

> (1) that defense counsel was so inattentive or indifferent during the jury selection process that the failure to remove a pro-

spective juror was not the product of a conscious choice or preference; (2) that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror; or (3) that there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable.

*Id.* at ¶ 25 (footnote omitted).

¶ 43 Carter has made no such showing in this case. First, there are no allegations that counsel was inattentive or indifferent to the jury selection process during the 1992 penalty hearing. To the contrary, the record demonstrates that counsel fully participated in the in-chambers voir dire of juror Nelson. Furthermore, Carter's counsel challenged three jurors who expressed views similar to juror Nelson. Only after the extensive voir dire of Nelson did counsel make a strategic choice not to challenge him.

¶ 44 Next, Carter has not shown that Nelson's responses to voir dire demonstrated bias so strong or unequivocal that there was no plausible justification for counsel's decision not to challenge him for cause. When questioned about the responses Nelson supplied on the jury questionnaire, Nelson stated that his religious beliefs would not cause him to impose an automatic death penalty. Nelson also explained his answer regarding whether racial or ethnic minorities were more likely to commit crimes by saying that he believed "people in poverty situations," regardless of race or ethnicity, were more likely than others to commit crimes. Nelson also stated that he would be willing to put aside any negative feelings he had towards Carter based on Carter's conviction and apply the law as provided by the trial court. Based on these answers, we do not find such strong bias that there is no plausible justification for counsel's decision not to challenge Nelson.

¶ 45 Finally, Carter has not presented any evidence that "there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable." *Id.* at ¶ 25.

¶ 46 Because Carter has not shown that counsel was inattentive or indifferent during

jury selection, or that Nelson's bias was so unequivocal that there could be no justification for counsel's decision to pass him for cause, or that there is no plausible justification for counsel's decision, Carter has not demonstrated that counsel's performance in passing Nelson for cause was deficient below an objective standard of reasonable professional judgment. Carter has thus failed to satisfy the first prong of the *Strickland* test.

¶ 47 Standing alone, Carter's inability to satisfy the first prong of *Strickland* defeats his claim for ineffective assistance of counsel. However, even if we assume that the first prong of *Strickland* was met, Carter has not satisfied the second *Strickland* prong because he has failed to show that counsel's performance prejudiced him. In order to show prejudice, Carter would have to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Carter has not done so in this case. He has not offered any evidence to show that had counsel challenged juror Nelson for cause there is a reasonable probability that the outcome in this case would have been different. Therefore, our confidence in the outcome is not undermined and the district court properly dismissed this claim.

### 2. Appellate Counsel in *Carter I.*

¶ 48 In analyzing Carter's claims of ineffective assistance of appellate counsel, we turn to the Tenth Circuit Court of Appeals' decision in *Banks v. Reynolds:*

When a habeas petitioner alleges that his counsel was ineffective for failing to raise an issue on appeal, we examine the merits of the omitted issue. Failure to raise an issue that is without merit "does not constitute constitutionally ineffective assistance of counsel" because the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. Thus, counsel frequently will "winnow out" weaker claims in order to focus effectively on those more likely to prevail. However, an "appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,'

even though counsel may have presented strong but unsuccessful claims on appeal." 54 F.3d 1508, 1515 (10th Cir.1995) (citations omitted). In describing what type of claim qualifies as a "dead-bang winner," the *Banks* court described it as an "issue which is obvious from the trial record and one which probably would have resulted in reversal on appeal." *Id.* at 1515 n. 13. We accept the reasoning of *Banks*. Therefore, we examine the merits of the issues Carter claims his appellate counsel was ineffective for not raising to determine whether Carter's appellate counsel provided ineffective assistance.

¶ 49 Carter first argues that appellate counsel in *Carter I* was ineffective for failing to argue that the reasonable doubt instruction given at his original trial was unconstitutional because it erroneously described the reasonable doubt standard. The instruction Carter complains of provides, in part,

But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt such as you will be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.

Because this court rejected the "weighty and important matters" language in *State v. Ireland,* 773 P.2d 1375, 1380 (Utah 1989), Carter claims that his appellate counsel was ineffective for failing to challenge this instruction on appeal in *Carter I.*

¶ 50 We disagree. First, this court did not announce the rule in *Ireland* until 1989, a year after Carter filed his last brief in *Carter I.* Appellate counsel had no way of knowing that this language would later be rejected by this court. Second, although in *Ireland* we held that the "weighty and important matters" language should be omitted from any future reasonable doubt instruction, we acted only prospectively and did not grant appellate relief to Ireland. Therefore, even if on direct appeal in *Carter I* Carter's counsel had argued that we should have rejected the "weighty and important matters" language, we would have done so only prospectively, as we did in *Ireland,* and Carter would not have been granted appellate relief.

¶ 51 Carter also argues that appellate counsel should have challenged the language in the instruction that states "[a] reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary." However, after reviewing this claim, we find no constitutional deficiency in the instruction.[4] Therefore, this is not an issue that was likely to result in reversal on appeal, and appellate counsel in *Carter I* did not provide ineffective assistance in failing to raise it.

¶ 52 Carter next argues that appellate counsel in *Carter I* was ineffective for failing to argue that the prosecution withheld material evidence from Carter. We find no merit to this argument. There is no support in the record for the claim that the prosecution withheld any evidence. In fact, in *Carter II,* we specifically pointed out that the State had an open file policy, allowing Carter to access any information the State had regarding Carter's case. *Carter II,* 888 P.2d at 640. Therefore, it is unlikely that a claim that the prosecution withheld evidence would have succeeded on direct appeal and Carter's appellate counsel was not ineffective for failing to raise it.

¶ 53 Carter next claims that *Carter I* appellate counsel was ineffective because he should have argued that Carter was denied a psychiatric expert at trial and that trial counsel's failure to do so constituted ineffective assistance. This claim involves the following facts: During Carter's original trial, Carter was examined by two alienists. Although one alienist found some evidence that Carter had an anti-social personality disorder, there was no evidence that Carter suffered from a major psychological disorder. Furthermore, both alienists concluded that at the time of

---

**4.** Although the instruction uses the term "substantial doubt," which was criticized by the United States Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), use of "substantial doubt" when contrasted with "a doubt arising from mere possibility" or "from bare imagination," as it was here, was upheld in the Court's later decision in *Victor v. Nebraska,* 511 U.S. 1, 19–20, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

the murder Carter could distinguish right from wrong, he understood the nature of his actions, and he was in control of his actions. Following these examinations, Carter specifically instructed trial counsel not to pursue an insanity defense, and counsel moved to withdraw the notice of the defense of insanity. In considering the motion to withdraw the insanity defense, the trial court examined Carter to assure that this was his wish, which Carter confirmed. The court then granted the motion.

¶ 54 In Carter's first supplemental brief in *Carter I*, Carter argued that trial counsel provided ineffective assistance because counsel waited until fourteen days before trial to request that mental status evaluations be performed and then recommended that Carter withdraw the defense of insanity after receiving the results of the evaluations. However, in Carter's second supplemental brief in *Carter I*, Carter withdrew this argument saying that he did not authorize the insanity defense, anyway, and "he had instructed his [trial] counsel to argue to the jury that he was not guilty because he did not do the act, not because he was insane...."

¶ 55 Based on these facts, we do not find any merit to Carter's claim that *Carter I* appellate counsel should have argued that Carter was denied a psychiatric expert. Because Carter specifically instructed trial counsel not to pursue the insanity defense, and because there is no evidence that Carter lacked the capacity to make this decision, appellate counsel was not ineffective for failing to raise this issue on appeal.

■■■ ¶ 56 Carter also assails *Carter I* appellate counsel for failing to assure the existence of a complete record by pursuing supplementation of the record. Carter does not, however, point out what information was missing from the record or what information should have been supplemented. In addition to failing to show how counsel's performance in this regard was deficient, Carter also fails to show how he was prejudiced. Therefore, Carter's claim that appellate counsel was ineffective for failing to assure the completeness of the record must be rejected.

■■■ ¶ 57 Carter next argues that appellate counsel in *Carter I* was ineffective for failing to raise the issue that the Information charging Carter with capital homicide was defective. However, in making this argument Carter does not provide any explanation regarding how he believes the Information was lacking. Carter merely alleges that appellate counsel was ineffective for failing to argue the defectiveness of the Information. Because Carter does not point out, nor has our review of the record uncovered, any specific deficiencies in the Information, this claim was not likely to succeed on direct appeal and counsel was therefore not ineffective for failing to raise it.

¶ 58 Finally, with regard to appellate counsel in *Carter I*, Carter argues that counsel was ineffective for failing to argue that trial counsel was ineffective. This argument necessarily fails because appellate counsel in *Carter I* did in fact raise an ineffective assistance of trial counsel claim on appeal in *Carter I*. In Carter's first supplemental brief in *Carter I*, he argued that counsel during the 1985 trial was ineffective for (1) failing to seek any pretrial discovery from the State, (2) failing to conduct any investigation into the crime, and (3) failing to request appointment of a psychiatric expert to assist in Carter's defense. Furthermore, the ACLU also raised a number of issues regarding the ineffectiveness of counsel at trial, issues that Carter later adopted in his second supplemental brief. Because appellate counsel in *Carter I* did in fact argue that Carter's trial counsel was ineffective, Carter's claim that appellate counsel was ineffective for failing to make such an argument must be rejected. *See Gardner v. Holden*, 888 P.2d 608, 613 (Utah 1994).

### 3. Appellate Counsel in *Carter II*.

■■■ ¶ 59 Carter also attacks the effectiveness of his appellate counsel in *Carter II* by arguing that counsel was ineffective for failing to move for a remand hearing to establish facts relating to a claim for ineffective assistance of his 1992 sentencing hearing counsel, and further that appellate counsel in *Carter II* was ineffective for failing to raise the issues Carter now raises in his petition

for habeas corpus. We address the allegations of error by appellate counsel in *Carter II* on their merits because these claims could only have been raised for the first time in a petition for a writ of habeas corpus. We find both of these arguments to be without merit.

¶ 60 First, regarding the failure of *Carter II* appellate counsel to move for a remand hearing to establish facts related to the ineffectiveness of 1992 penalty hearing counsel, Carter was represented by the same counsel during both the 1992 penalty hearing and the direct appeal in *Carter II*. As we stated in *State v. Litherland,* " 'ineffective assistance of counsel should be raised on appeal if [1] the trial record is adequate to permit decision of the issue and [2] defendant is represented by counsel other than trial counsel.' " 2000 UT 76, ¶ 9, 12 P.3d 92 (quoting *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991)). Counsel cannot be found ineffective for failing to raise an ineffectiveness of counsel issue against himself or herself. Accordingly, because Carter was represented by the same counsel for both the penalty hearing and the direct appeal, appellate counsel in *Carter II* was not ineffective for not raising the ineffectiveness issue, nor for not requesting a hearing on the matter.

¶ 61 With regard to Carter's claim that appellate counsel in *Carter II* was ineffective for failing to raise the issues Carter now raises in his petition for habeas corpus, the district court found that it had considered and rejected all of the issues raised in the petition, and therefore counsel did not provide ineffective assistance in failing to raise them on direct appeal in *Carter II*. We agree with the district court. After reviewing all of the issues raised in Carter's petition for habeas corpus, we do not find any claims that warrant reversal of either his conviction or his death sentence. None of the issues raised warrants reversal, and appellate counsel in *Carter II* did not provide ineffective assistance in failing to raise these issues.

## CONCLUSION

¶ 62 The district court's order dismissing Carter's petition for a writ of habeas corpus is affirmed.

¶ 63 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.