2007 UT 53

**Jorge Martin BENVENUTO,
Plaintiff and Appellant,**

v.

**STATE of Utah, Defendant and Appellee.**

**No. 20060197.**

Supreme Court of Utah.

July 17, 2007.

Grant W. P. Morrison, William Patrick Morrison, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Asst. Att'y Gen., Salt Lake City, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 This case is before us on appeal from the district court's order denying Jorge Martin Benvenuto's petition for post-conviction relief. Benvenuto argues that the State of Utah violated his rights as a foreign national under the Vienna Convention on Consular

Relations ("Vienna Convention") when law enforcement authorities failed to notify him of his right to consular notification upon his arrest. He also argues that he is entitled to post-conviction relief because his attorneys were ineffective in failing to notify him of his rights under the Vienna Convention and failing to argue that he should have been allowed to withdraw his guilty pleas because those rights were violated. We address each of Benvenuto's arguments and ultimately affirm the decision of the district court denying post-conviction relief.

## BACKGROUND

¶ 2 Benvenuto was born in Uruguay on July 31, 1977, and entered the United States with his mother in August 1985 through a resident visa. He remains a citizen of Uruguay and has never obtained United States citizenship. He lived in New York City until 1995, when he relocated to Utah.

¶ 3 On the evening of August 28, 1996, Benvenuto shot Zachary Snarr and Yvette Rodier several times, killing Snarr and severely wounding Rodier. The police located Benvenuto the following day and took him into custody. While in custody, he confessed to the crime. Benvenuto never informed law enforcement that he was an Uruguayan national because he believed he was, in fact, a citizen of the United States.[1]

¶ 4 In September 1996, the State charged Benvenuto with aggravated murder, a capital felony; attempted aggravated murder; and two counts of aggravated robbery. The trial court appointed four attorneys to represent Benvenuto, three of whom had experience representing capital homicide defendants, and all of whom had experience representing homicide and felony defendants.[2] There is no evidence in the record that Benvenuto ever told any of these attorneys that he was a citizen of Uruguay.

¶ 5 On October 15, 1997, Benvenuto accepted a plea offer from the State. Benvenuto pleaded guilty to one count each of aggravat-

ed murder and attempted aggravated murder. In exchange for these guilty pleas, the State dropped the aggravated robbery counts and agreed not to seek the death penalty on the capital murder charge. At the plea-change hearing, the trial judge engaged in an extensive colloquy with Benvenuto and determined that Benvenuto knowingly and voluntarily entered into his guilty pleas. At this hearing, the trial judge asked Benvenuto if he read, wrote, and spoke English. Benvenuto acknowledged that he did. In addition, Benvenuto told the judge that English was his primary language and affirmatively represented that he was a United States citizen. The judge also noted, and Benvenuto confirmed, that Benvenuto was born in Uruguay.

¶ 6 After pleading guilty, but before being formally sentenced, Benvenuto filed a motion to withdraw his guilty pleas and retained new counsel. Benvenuto argued that he was confused and depressed at the time he pleaded guilty. He alleged neither that he was a citizen of Uruguay nor that police failed to inform him of his rights under the Vienna Convention, and he did not seek to withdraw his pleas based on any alleged violation of the Vienna Convention. The trial court held an evidentiary hearing and again found that Benvenuto entered into his pleas knowingly and voluntarily. On January 30, 1998, the trial court formally sentenced Benvenuto to life in prison without parole on the aggravated murder charge and an indeterminate prison term of five years to life on the attempted aggravated murder charge.

¶ 7 Benvenuto appealed, challenging the trial court's findings and conclusions on his motion to withdraw his pleas. Again, he neither alleged Uruguayan citizenship nor argued that his Vienna Convention rights had been violated. We affirmed the trial court's rulings on June 18, 1999.[3] Benvenuto's time to seek review before the United States Supreme Court expired ninety days later.

¶ 8 In July 2002, Ciro Darelli, a member of the Uruguayan Consulate, visited Benvenuto

---

1. Benvenuto identified himself as a United States citizen on an employment application he completed in October 1995.

2. These appointments met the requirements of rule 8 of the Utah Rules of Criminal Procedure.

3. *State v. Benvenuto*, 1999 UT 60, 983 P.2d 556.

in prison. During or shortly after that visit, Benvenuto learned that he was a citizen of Uruguay despite the fact that he always assumed himself to be a citizen of the United States. He also learned that, at the time of his arrest, he had a right under the Vienna Convention to immediately communicate with the Uruguayan Consulate. Benvenuto claims that he lacked the proper resources to hire an attorney and therefore did not do so until November 16, 2004. Benvenuto filed this petition for post-conviction relief on July 15, 2005, which the district court dismissed on February 2, 2006. Benvenuto now appeals, and we have jurisdiction pursuant to Utah Code section 78-2-2(3)(i).

## STANDARD OF REVIEW

¶ 9 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law."[4] As to an ineffective assistance of counsel claim, "we review a lower court's purely factual findings for clear error, but review the application of the law to the facts for correctness."[5]

## ANALYSIS

¶ 10 Benvenuto has exhausted all of his direct appeals and now challenges his conviction collaterally under Utah's Post–Conviction Remedies Act (the "PCRA").[6] He makes a number of claims for post-conviction relief, all of which are based on alleged violations of his rights as an arrested foreign national under the Vienna Convention on Consular Relations.

¶ 11 The Vienna Convention is a multilateral treaty to which both the United States and Uruguay are signatory nations. The purpose of the Vienna Convention is to "ensure the efficient performance of functions by consular posts on behalf of their respective States."[7] These functions include:

> (a) protecting in the receiving State the interests of the sending State and of its nationals . . .;
>
> . . .;
>
> (e) helping and assisting nationals . . . of the sending State;
>
> . . .;
>
> (i) subject to the practices and procedures obtaining in the receiving State, representing or arranging appropriate representation for nationals of the sending State before the tribunals and other authorities of the receiving State, for the purpose of obtaining, in accordance with the laws and regulations of the receiving State, provisional measures for the preservation of the rights and interests of these nationals, where, because of absence or any other reason, such nationals are unable at the proper time to assume the defence of their rights and interests.[8]

¶ 12 With respect to foreign nationals that are arrested or otherwise detained, the Vienna Convention provides for the exercise of consular functions as follows:

> [I]f [the foreign national] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. . . . The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.][9]

4. *Taylor v. State*, 2007 UT 12, ¶ 13, 156 P.3d 739 (internal quotation marks and citations omitted).

5. *Id.*

6. Utah Code Ann. §§ 78-35a–101 to –304 (2002 & Supp.2006).

7. Vienna Convention on Consular Relations preamble, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

8. Vienna Convention on Consular Relations art. 5, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

The "receiving State" is the country in which the foreign national is located, and the "sending State" is the foreign national's country of origin. In this case, the United States is the receiving State and Uruguay is the sending State.

9. Vienna Convention on Consular Relations art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

Law enforcement officials in the United States therefore have a duty to notify an arrested foreign national "without delay" that he has a right to contact and communicate with his consulate.

¶ 13 Benvenuto argues that the State of Utah violated his rights to consular notification under the Vienna Convention and that the proper remedy for this violation is to have his conviction and sentence reviewed and reconsidered. Benvenuto believes that he is entitled to post-conviction relief for two reasons. First, he argues that, had he been aware of a violation of an international treaty, this "likely would have precluded a plea of guilty." Second, he argues that his trial and appellate counsel were ineffective because they failed to notify him of his rights under the Vienna Convention and failed to argue that he should have been permitted to withdraw his guilty pleas because his rights under the Vienna Convention were violated.

¶ 14 In response, the State of Utah argues that Benvenuto's petition is both procedurally barred and time barred. The alleged violations of the Vienna Convention are, the State argues, issues that could have been, but were not, raised in Benvenuto's motion to withdraw his guilty pleas; as such, the petition is procedurally barred. In addition, the State argues that Benvenuto's claims were filed long past the expiration of the statute of limitations for post-conviction relief and are time barred.

¶ 15 We affirm the district court's order and hold that Benvenuto's request for post-conviction relief is both procedurally barred and time barred. In so holding, we first address the requirements of the PCRA. We then address the procedural bar and the time bar and find that Benvenuto has not met the requirements to overcome either of them. We note that the district court's opinion in this case was particularly thorough and well reasoned; we therefore quote liberally from it.

## I. UTAH'S POST-CONVICTION REMEDIES ACT ENUMERATES THE BASES FOR AND BARS TO POST-CONVICTION RELIEF

¶ 16 The Post-Conviction Remedies Act [10] allows "a person who has been convicted and sentenced for a criminal offense" to file an action for post-conviction relief upon the following grounds:

(a) the conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution;

(b) the conviction was obtained under a statute that is in violation of the United States Constitution or Utah Constitution, or the conduct for which the petitioner was prosecuted is constitutionally protected;

(c) the sentence was imposed in an unlawful manner, or probation was revoked in an unlawful manner;

(d) the petitioner had ineffective assistance of counsel in violation of the United States Constitution or Utah Constitution; or

(e) newly discovered material evidence exists that requires the court to vacate the conviction or sentence.[11]

A petitioner is "procedurally barred" from relief under the PCRA if an issue "could have been but was not raised at trial or on appeal" [12] unless the petitioner can demonstrate that "the failure to raise that ground was due to ineffective assistance of counsel." [13] In addition, a "time bar" precludes post-conviction relief unless the petitioner files the petition "within one year after the cause of action has accrued." [14] But "[i]f the court finds that the interests of justice require, a court may excuse a petitioner's failure to file within the time limitations." [15]

¶ 17 We address the procedural bar and the time bar as they apply to Benvenuto below.

**10.** Utah Code Ann. §§ 78–35a–101 to –304 (2002 & Supp.2006).

**11.** *Id.* § 78–35a–104(1) (2002).

**12.** *Id.* § 78–35a–106(1)(c).

**13.** *Id.* § 78–35a–106(2).

**14.** *Id.* § 78–35a–107(1).

**15.** *Id.* § 78–35a–107(3).

## II. BENVENUTO IS PROCEDURALLY BARRED FROM SEEKING POST–CONVICTION RELIEF

¶ 18 Because the PCRA bars petitions for relief for issues that "could have been but w[ere] not raised at trial or on appeal," [16] and Benvenuto concedes that he could have but did not raise his Vienna Convention claims at those times, his petition is barred unless he can demonstrate that the failure to raise the issue at trial and on appeal was due to the ineffective assistance of counsel.[17] To prevail on an ineffective assistance of counsel claim, Benvenuto must meet the requirements of *Strickland v. Washington*[18] and demonstrate, "first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced" him.[19] We address each prong of the *Strickland* standard with respect to Benvenuto's claims below.

### A. The Performance of Benvenuto's Trial, Post–Plea, and Appellate Counsel Was Not Deficient

¶ 19 An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." [20] The seriousness of those errors is measured by whether "counsel's representation fell below an objective standard of reasonableness"—"reasonableness under prevailing professional norms." [21] In making this assessment, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." [22]

¶ 20 In challenging counsel's effectiveness,

> [a] convicted defendant ... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.[23]

Importantly, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." [24] The court must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." [25]

¶ 21 Benvenuto's claims for ineffective assistance of trial, post-plea, and appellate counsel do not satisfy the *Strickland* standard. First, he has not demonstrated that his trial counsel were in any way deficient. Benvenuto has not demonstrated that a reasonable capital defense attorney would have investigated Benvenuto's citizenship despite Benvenuto's own belief and representations that he was a U.S. citizen. Benvenuto does not claim that he informed counsel of his foreign birth, and even if it were assumed he did, he does not claim that he informed them that he could be a foreign national. Indeed, nothing in the record suggests a reasonable defense attorney would have been

---

16. *Id.* § 78–35a–106(1)(c).

17. *Id.* § 78–35a–106(2).

18. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

19. *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988).

20. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

21. *Id.* at 688, 104 S.Ct. 2052.

22. *Id.* at 689, 104 S.Ct. 2052 (internal quotation marks omitted).

23. *Id.* at 690, 104 S.Ct. 2052.

24. *Id.* at 691, 104 S.Ct. 2052.

25. *Id.* at 689, 104 S.Ct. 2052.

prompted to investigate whether Benvenuto was a foreign citizen.

¶ 22 Benvenuto's accusations that his post-plea and appellate counsel were deficient likewise fail. For the same reasons his trial counsel were not ineffective for not knowing of his foreign nationality, his post-plea and appellate counsel were likewise not ineffective. Again, nothing in the record suggests Benvenuto's post-plea and appellate counsel knew anything more of his citizenship status than his trial counsel knew. And even if Benvenuto's post-plea and appellate attorneys had discovered his foreign citizenship, Benvenuto fails to point to any authority upon which his attorneys could have relied at the relevant time to withdraw his guilty pleas based on a violation of the Vienna Convention. Benvenuto cites no case and we cannot find a case prior to 1999 in which a defendant obtained substantive relief because of a Vienna Convention violation.[26] We therefore hold that Benvenuto's trial, post-plea, and appellate counsel rendered reasonable, effective, and professional assistance.

### B. Benvenuto Suffered No Prejudice

¶ 23 Even if an attorney's performance was deficient, a claim for ineffective assistance of counsel will fail if counsel's deficiencies had no effect on the outcome of the proceeding.[27] Because "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding . . . any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[28] "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding";[29] instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[30] And as with the first prong of the *Strickland* standard, there is a "strong presumption" that the outcome of the particular proceeding is reliable.[31]

¶ 24 When challenging a guilty plea on the grounds of ineffective assistance of counsel, a petitioner must demonstrate " 'a reasonable probability that, but for counsel's errors he . . . would not have pleaded guilty and would have insisted on going to trial.' "[32] When challenging the effectiveness of appellate counsel, the standard is the same as for trial counsel.[33] Specifically, when considering an allegation that appellate counsel

"was ineffective for failing to raise an issue on appeal, we examine the merits of the omitted issue. Failure to raise an issue that is without merit 'does not constitute constitutionally ineffective assistance of counsel' because the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal."[34]

Thus, to demonstrate the ineffective assistance of appellate counsel, a petitioner must

first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel un-

---

26. *See generally* Ann K. Wooster, Annotation, *Construction and Application of Vienna Convention on Consular Relations (VCCR), Requiring that Foreign Consulate Be Notified when One of Its Nationals Is Arrested,* 175 A.L.R. Fed. 243 (2002) (collecting and reporting cases involving alleged violations of foreign nationals' Vienna Convention rights).

27. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

28. *Id.* at 691–92, 104 S.Ct. 2052.

29. *Id.* at 693, 104 S.Ct. 2052.

30. *Id.* at 694, 104 S.Ct. 2052.

31. *Id.* at 699, 104 S.Ct. 2052.

32. *Parsons v. Barnes,* 871 P.2d 516, 525 (Utah 1994) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

33. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ("[T]he proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in *Strickland v. Washington.*"); *Bruner v. Carver,* 920 P.2d 1153, 1157 (Utah 1996).

34. *Carter v. Galetka,* 2001 UT 96, ¶ 48, 44 P.3d 626 (quoting *Banks v. Reynolds,* 54 F.3d 1508, 1515 (10th Cir.1995) (citations omitted)).

reasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [a petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.[35]

¶ 25 Benvenuto has failed to demonstrate that he was in any way prejudiced by his trial or appellate counsel's alleged deficiencies. He fails to show that, absent those alleged deficiencies, he would not have pleaded guilty, but would have risked the death penalty and gone to trial; the trial court would have allowed him to withdraw his pleas; or his appeal would have been granted. The basis of Benvenuto's failure to demonstrate prejudice flows from his inability to show that, had he been told of his Vienna Convention rights, there is a "reasonable probability that ... he ... would not have pleaded guilty and would have insisted on going to trial."[36] Instead, as the district court correctly observed,

> It appears that [Benvenuto] pleaded guilty primarily because of the overwhelming evidence of guilt possessed by [the State] and because pleading guilty would essentially insulate him from receiving a sentence of death. [Benvenuto] has not shown that knowing he could contact the Uruguayan consulate would have altered the strength of [the State's] case in any material way. Moreover, [Benvenuto] provides the court with no facts or argument demonstrating that had he been properly notified of his rights under the Vienna Convention and had members of the Uruguayan consulate consulted with him, that there is a reasonable probability that any advice or assistance they could have provided would have altered [Benvenuto's] decision to plead guilty and avoid exposure to the death penalty. Without this showing, [Benvenuto] cannot show that his trial or appellate

attorneys provided him with ineffective assistance of counsel.

¶ 26 Because he cannot meet either prong of the *Strickland* standard, Benvenuto's claim of ineffective assistance of counsel is without merit. His petition for post-conviction relief is therefore procedurally barred under the PCRA.

### III. BENVENUTO IS TIME BARRED FROM SEEKING POST-CONVICTION RELIEF

¶ 27 Even if we were to find that Benvenuto's claim is not procedurally barred by the PCRA, he would still be required to overcome its time bar. The PCRA provides that "[a] petitioner is entitled to relief only if the petition [for post-conviction relief] is filed within one year after the cause of action has accrued" unless the court finds that the "interests of justice" require it to excuse the late filing.[37] In this case, Benvenuto concedes that the statute of limitations expired for his post-conviction claim on September 16, 2000, one year after "the last day for filing a petition for writ of certiorari in the ... United States Supreme Court, if no petition for writ of certiorari is filed,"[38] although it arguably didn't expire until July 2003, one year after "the date on which [Benvenuto] knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based,"[39] if it is assumed that his visit with the Uruguayan consulate is the date on which his cause of action accrued. But in either case, Benvenuto missed the deadline for filing a petition for post-conviction relief by years, filing his petition on July 15, 2005. Thus, in order to have his petition considered, Benvenuto must meet the "interests of justice" exception to the PCRA time bar. To determine "what constitutes an exception in the 'interests of justice,'" we examine "both the meritoriousness of the ... claim and the reason for an untimely filing."[40] As we discuss below, Ben-

---

35. *Robbins,* 528 U.S. at 285, 120 S.Ct. 746.

36. *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

37. Utah Code Ann. § 78–35a–107(1), (3) (2002).

38. *Id.* § 78–35a–107(2)(c).

39. *Id.* § 78–35a–107(2)(e).

40. *Adams v. State,* 2005 UT 62, ¶ 16, 123 P.3d 400.

venuto's claim is not meritorious and the reason for his untimely filing is unavailing.

## A. Benvenuto's Claims Lack Merit

■■ ¶ 28 Benvenuto relies on case law from the International Court of Justice (the "ICJ") to support his claim that law enforcement officials violated his Vienna Convention rights when they failed to notify him of his right to consular assistance at the time of his arrest. With respect to such claims, the ICJ has stated that

the duty upon detaining authorities to [notify foreign nationals that they may contact their consulates] arises once it is realized that the person is a foreign national, or once there are grounds to think that the person is probably a foreign national. Precisely when this may occur will vary with circumstances.... [W]hen an arrested person himself claims to be of United States nationality, the realization by the authorities that he is not in fact a United States national, or grounds for that realization, is likely to come somewhat later in time.[41]

In addition, the ICJ has said that, where there is an indication that an arrestee is a foreign national, this should cause "rapid enquiry by the arresting authorities and the providing of consular information 'without delay.'"[42]

¶ 29 Benvenuto's claims lack merit, first and foremost, because he has failed to demonstrate that law enforcement officials violated his notification rights under the Vienna Convention. Benvenuto has not demonstrated that arresting authorities were aware, or reasonably could have been aware, of his foreign nationality. Benvenuto believed himself to be a U.S. citizen and held himself out as such. Indeed, as the district court noted, "Even had arresting authorities been required to make an inquiry of [Benvenuto] with respect to his nationality, he would have told them, as he did the trial judge at the change-of-plea hearing, that he was a United States citizen." Thus, based on the ICJ's standard, because law enforcement was not aware that Benvenuto was, or could probably be, a foreign national, they did not violate his Vienna Convention rights by failing to provide him with consular information.

¶ 30 Additionally, Benvenuto's claims lack merit because, for the same reasons law enforcement authorities could not have known that Benvenuto was a citizen of Uruguay, neither could his trial and appellate attorneys have known of his foreign nationality. Benvenuto cannot demonstrate that his trial counsel was deficient in failing to inform him of his Vienna Convention rights prior to his change-of-plea hearing or that his post-plea counsel and appellate counsel were deficient in failing to argue that he should have been allowed to withdraw his guilty pleas on the basis of a violation of his Vienna Convention rights. Moreover, even assuming counsel was deficient, Benvenuto has not demonstrated that, but for that deficiency, he would not have pleaded guilty, but would have risked the death penalty and gone to trial; that his motion to withdraw his pleas would have been accepted by the trial court; and that the outcome of his appeal would have been different.

¶ 31 Finally, even if we assume that Benvenuto's notification rights under the Vienna Convention were violated, his post-conviction claims are still without merit. Not only does Benvenuto fail to show that there is a substantive remedy for a violation of those rights, he waived claims based on violations of the Vienna Convention with his guilty pleas. We have explained that the "general rule applicable in criminal proceedings, and the cases are legion, is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged preplea constitutional violations."[43] We again

---

**41.** Case Concerning Avena and Other Mexican Nationals (Mex.v.U.S.), 2004 I.C.J. 33 (March 31).

**42.** *Id.* at 34.

**43.** *State v. Parsons*, 781 P.2d 1275, 1278 (Utah 1989); *see Tollett v. Henderson* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (stating that a defendant who "has solemnly admitted in open court that he is in fact guilty ... may not thereafter raise independent claims relating to

agree with the district court, which reasoned that, "if a knowing and voluntary guilty plea waives pre-plea constitutional defects, . . . then it also waives any treaty-based non-jurisdictional defects, such as failing to notify an arrestee of his rights under the Vienna Convention."[44] Because Benvenuto entered his guilty pleas knowingly and voluntarily, he waived any claims based on violation of his Vienna Convention notification rights.

¶ 32 We agree with the district court that Benvenuto has "failed to present adequate factual evidence or legal authority to support a conclusion that his post-conviction claims" have merit, primarily because he cannot demonstrate that a violation of his Vienna Convention rights even occurred. We also agree that, even if Benvenuto's notification rights under the Vienna Convention were violated, his post-conviction claims are not sufficiently meritorious to warrant an exception to the PCRA in the "interests of justice."

### B. Benvenuto's Reason for Filing an Untimely Petition Is Inadequate

¶ 33 Benvenuto offers two reasons for having waited several years after the expiration of the PCRA limitations period to file his petition for post-conviction relief. First, he claims that he lacked the resources to adequately research and file his petition while in prison. Second, he claims that he could not afford an attorney to assist him until November 2004.

¶ 34 We agree with the district court that neither of these reasons justifies his late filing. The court correctly explained that Benvenuto could have filed a petition himself or could have requested that an attorney be appointed for him.

> Even if it is true that [Benvenuto] lacked the resources to adequately research his Vienna Convention violation claim, and therefore needed the assistance of an attorney, this state-of-affairs did not prevent

him from filing an initial petition for post-conviction relief using Form 47 of the Utah Rules of Civil Procedure and subsequently amending it, if necessary, pursuant to Rule 15. Moreover, the alleged lack of sufficient legal resources at the prison also does not explain why [Benvenuto] could not have requested the court to appoint an attorney pursuant to the PCRA to assist him.[45] . . . On the contrary, [Benvenuto's] contention that he lacked adequate resources to pursue his claim is the model reason why [he] should have requested the appointment of counsel rather than waiting until November 16, 2004 to hire his own attorney. It has been the court's experience that prison inmates routinely file non-frivolous petitions for post-conviction relief and request the appointment of counsel to assist them in pursuing their claims.

Given the opportunities available to him, Benvenuto's reasons for not filing his petition for post-conviction relief until several years after the limitations period expired are simply inadequate.

¶ 35 In sum, Benvenuto's claims are without merit, and he does not have an acceptable reason for the untimely filing of his petition for post-conviction relief. Benvenuto therefore fails to meet the requirements of the interests of justice exception to the statute of limitations. As such, his claims are time barred under the PCRA.

### CONCLUSION

¶ 36 We affirm the district court's order dismissing Benvenuto's petition for post-conviction relief. We hold that his petition is barred by Utah Code section 78–35a–106(1)(c) because he could have alleged a violation of his Vienna Convention rights at trial or on appeal, but did not. Because Benvenuto's trial, post-plea, and appellate counsel rendered effective assistance, his petition is not excepted from this procedural

---

the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

**44.** *See United States v. Reyes–Platero,* 224 F.3d 1112, 1115 (9th Cir.2000) ("If a guilty plea cures a constitutional defect, then it certainly cures a defect caused by failure to comply with a treaty."); *see also United States v. Gonzales,* 339 F.3d

725, 729 (8th Cir.2003) ("[A] failure to advise a criminal defendant of the right to consular contact [does] not constitute a jurisdictional defect.").

**45.** *See* Utah Code Ann. § 78–35a–109.

bar. In addition, we hold that Benvenuto's petition is barred by Utah Code section 78–35a–107(1) because it was brought after the one-year limitations period had expired. We find Benvenuto's allegations to be without merit and his reason for the untimely filing inadequate; as such, we do not except his petition from this time bar in the interests of justice.

¶ 37 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.