2012 UT 93

**Trovon Donta ROSS, Petitioner and Appellant,**

v.

**STATE of Utah, Respondent and Appellee.**

No. 20090894.

Supreme Court of Utah.

Dec. 21, 2012.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Christopher D. Ballard, Asst. Att'ys Gen., Salt Lake City, for appellee.

Sanna–Rae Taylor, Salt Lake City, for appellant.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 Trovon Donta Ross was convicted of aggravated murder and attempted aggravated murder in 2004. Following a direct appeal, he filed a pro se petition seeking relief under the Post–Conviction Remedies Act (PCRA) on the grounds that his trial counsel was ineffective for failing to raise the defense of extreme emotional distress and that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of counsel on direct appeal. He also twice requested that the court appoint counsel to represent him in post-conviction proceedings.

¶ 2 The court denied Mr. Ross's requests for counsel as premature. Further, it ultimately granted the State's motion for summary judgment, determining that Mr. Ross had not met his burden of establishing ineffective assistance of appellate counsel and that his ineffective assistance of trial counsel claim was procedurally barred. On appeal, Mr. Ross argues that the post-conviction court erred in granting the State's motion for summary judgment and in denying his requests for counsel.

¶ 3 We conclude that disputed issues of material fact preclude summary judgment on Mr. Ross's claim that his appellate counsel was ineffective. And because we cannot determine whether appellate counsel was ineffective, we cannot determine whether Mr. Ross's claim regarding trial counsel is procedurally barred by the PCRA. Accordingly, we reverse the court's grant of summary judgment on both of his ineffective assistance of counsel claims and remand this case for an evidentiary hearing. Finally, al-

though we conclude that the court did not abuse its discretion in denying Mr. Ross's initial requests for counsel, because he has established that his claims are sufficiently complex, we anticipate that, on remand, a renewed motion to appoint counsel would be well founded.

## BACKGROUND

¶ 4 Mr. Ross met Annie Christensen in late 2000 or early 2001, and developed a romantic relationship with her. In the early morning of June 30, 2003, Mr. Ross went to Ms. Christensen's home. When he arrived, Ms. Christensen answered the door wearing a top and shorts, and let Mr. Ross into her home. He waited in the front room while she went to her bedroom to get James May, who appeared wearing only pajama bottoms. Mr. Ross then began questioning Ms. Christensen, asking her to tell Mr. May when she last had sex with Mr. Ross. When Ms. Christensen did not respond, Mr. Ross pulled out a gun from his waistband and again questioned her. Ms. Christensen still refused to answer and begged Mr. Ross to leave.

¶ 5 At trial, Mr. May testified that, at that point, "the mood changed a little bit where like at first when he came in he was asking questions, and then once he pulled out the gun, the situation became a lot more intense." When Ms. Christensen still refused to respond to Mr. Ross, he turned to Mr. May and said, "I can't let her hurt you like she hurt me." He then pointed his gun at Ms. Christensen, grabbed her arm, and pushed her past Mr. May towards the bedroom, where he fired three shots, killing her.

¶ 6 In the meantime, fearing for his safety and intending to get help, Mr. May left the apartment, went into the garage, and got into his car. After a moment, he saw Mr. Ross in the doorway leading to the garage. Unable to start the car, Mr. May jumped out of the car and began running away. Mr. Ross fired six shots at Mr. May, one of which passed through Mr. May's right arm and into his chest. Mr. May continued running, eventually flagging down a passing motorist who called the police.

¶ 7 As Mr. Ross fled the scene, he called Ms. Christensen's father. Mr. Ross told him, "I just shot and killed your daughter ... and I'm on my way to your home to finish the job." Neighbors who heard the gunshots called the police and reported seeing Mr. Ross's white van leaving Ms. Christensen's home. Responding police officers chased Mr. Ross's van at high speeds for several miles. During the chase, Mr. Ross threw his gun out of the window. He also called and left a voicemail for his boss, acknowledging that he had shot Ms. Christensen and reporting that he was going to kill himself.

¶ 8 In November 2004, Mr. Ross was tried for the aggravated murder of Ms. Christensen and the attempted aggravated murder of Mr. May. At trial, he conceded his participation in the crimes and instead focused his defense on persuading the jury that he was not guilty of *aggravated* murder. After closing arguments, Mr. Ross's counsel requested an in-chambers conference. During this in-chambers conference, trial counsel stated, "There was no manslaughter defense raised based on any extreme emotional disturbance because of—because of evidentiary problems as are known to Mr. Ross and myself." Following extended remarks by trial counsel, the district court judge asked Mr. Ross, "[I]s that, in fact, the conversation and the strategy that you and [trial counsel] have decided on in this case?" Mr. Ross replied, "Yes, your honor." From the remarks made during the in-chambers conference, the postconviction court concluded that "the trial record conclusively demonstrates that the petitioner's trial counsel's decision not to raise the 'extreme emotional distress' affirmative defense was not only strategic but was specifically agreed to by the petitioner," such that it was appropriate to grant summary judgment to the State on this issue.

¶ 9 Ultimately, the jury convicted Mr. Ross of both aggravated murder and attempted aggravated murder. In exchange for the State's recommendation that he be sentenced to life without parole on the aggravated murder conviction, Mr. Ross agreed to waive his right to a jury in the penalty phase. The trial court sentenced Mr. Ross to life without parole for the aggravated murder and a con-

current prison term of five years to life for the attempted aggravated murder.

¶ 10 In 2007, new counsel represented Mr. Ross on direct appeal. Mr. Ross claimed on appeal that (1) Utah's death penalty statute was unconstitutionally vague, (2) his aggravated murder and attempted aggravated murder convictions should merge, (3) he was prejudiced by the impaneling of an anonymous jury, and (4) the prosecutor committed misconduct.[1] We agreed that his attempted aggravated murder conviction should merge with his aggravated murder conviction, but rejected the remainder of his claims.[2] Accordingly, we affirmed his conviction for aggravated murder and vacated the conviction for attempted aggravated murder.[3]

¶ 11 On October 24, 2008, Mr. Ross filed a pro se petition for post-conviction relief (Petition). In the Petition, he argued that both his trial counsel and his appellate counsel had been ineffective. Specifically, he argued that his trial counsel was ineffective for failing to raise the defense of extreme emotional distress, and that his appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim on direct appeal. In the Petition, Mr. Ross also requested an evidentiary hearing to examine witnesses and evidence in support of his claims. Additionally, at that time, Mr. Ross filed a motion requesting the appointment of pro bono counsel to assist him in the post-conviction proceedings.

¶ 12 The Petition indicates that both Mr. Ross and Ms. Christensen "were sexually active with other partners" during their two-year relationship and that Mr. Ross knew that Ms. Christensen was dating other men, including Mr. May. But the Petition also states that Mr. Ross was deeply in love with Ms. Christensen, considering her to be "the love of his life," and believing that she was "his intended wife." Further, Mr. Ross indicates in the Petition that, a few days before the murder, Mr. Ross and Ms. Christensen had engaged in sexual relations and had promised each other that they would be in a committed relationship. Additionally, Mr.

Ross states that, on the morning of the murder, he noticed that he had missed a call from Ms. Christensen. Mr. Ross explains that he became concerned when she did not answer his attempts to return her call, because "this pattern had occurred" on two previous occasions, when she had called him seeking help and did not answer his return calls because she had been beaten by a former boyfriend. Thus, he claims that he went to her home fearing for her safety.

¶ 13 The post-conviction court determined that Mr. Ross's Petition did not provide a sufficient factual basis to support his claims and granted him leave to file an amended petition. Mr. Ross subsequently filed a memorandum supporting his Petition and asking the court to reconsider the Petition. The memorandum included further details regarding his claims and added a claim that his appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for foregoing an extreme emotional distress defense. When he submitted his memorandum, Mr. Ross also filed a second motion for the appointment of counsel.

¶ 14 The post-conviction court treated Mr. Ross's memorandum as an amendment of his original Petition. After reviewing the amended petition, the court dismissed as frivolous all of his claims except for his "claims of ineffective assistance of trial and appellate counsel pertaining to the failure of counsel to raise the affirmative defense" of extreme emotional distress. The court then ordered the State to respond to Mr. Ross's two remaining claims.

¶ 15 The court also denied Mr. Ross's motions for the appointment of counsel as premature. Specifically, the court reasoned that because the State had not yet submitted its response to Mr. Ross's Petition, it remained unclear whether an evidentiary hearing would be necessary. Further, the court noted that because it had dismissed the majority of Mr. Ross's claims without reviewing the merits of his surviving claims, "the complexity of [Mr. Ross's] remaining claims and the

---

**1.** *State v. Ross,* 2007 UT 89, ¶ 18, 174 P.3d 628.

**2.** *Id.* ¶¶ 66–67.

**3.** *Id.*

need for the appointment of counsel for the proper adjudication of such claims" was uncertain at that time. In a footnote, however, the court invited Mr. Ross to renew his motion to appoint counsel "at a more appropriate time, such as, if and when the Court determines that an evidentiary hearing on his petition for post-conviction relief is necessary following the submission" of the State's responsive pleading. Mr. Ross did not renew his motion to appoint counsel.

¶ 16 The State then moved for summary judgment on Mr. Ross's two remaining claims, and Mr. Ross opposed the motion (Opposition Motion). Nonetheless, the post-conviction court granted the State's motion for summary judgment. Regarding Mr. Ross's claim that trial counsel was ineffective, the court concluded that this claim could have been raised on direct appeal, and was therefore barred by the PCRA. And regarding Mr. Ross's claim that appellate counsel was ineffective for failing to assert trial counsel's ineffectiveness, the court determined that, based on the in-chambers conference, the trial record "conclusively demonstrates" that trial counsel's decision not to raise the extreme emotional distress defense "was not only strategic, but was specifically agreed to" by Mr. Ross, and concluded that "a claim for ineffective assistance of trial counsel based upon the failure of counsel to raise the affirmative defense would not have been obvious from the trial record" at Mr. Ross's direct appeal. Mr. Ross now appeals the post-conviction court's grant of summary judgment to the State and its denial of his motions for appointment of counsel.

¶ 17 We have jurisdiction pursuant to section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 18 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law."[4] Similarly, we review a grant of "summary judgment for correctness, granting no deference to the [lower] court. We affirm a grant of summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] In making this assessment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[6] Finally, we review the denial of a motion to appoint counsel under the PCRA for an abuse of discretion.[7]

## ANALYSIS

¶ 19 In this case, the post-conviction court concluded that "the trial record conclusively demonstrates that the petitioner's trial counsel's decision not to raise the 'extreme emotional distress' affirmative defense was not only strategic but was specifically agreed to by the petitioner." The court further determined that "the failure of [trial] counsel to raise the affirmative defense would not have been [an] obvious [claim] from the trial record at the petitioner's direct appeal." Moreover, the court held that "because ... trial counsel's decision to not raise the affirmative defense was strategic, the petitioner must set forth facts and argument to rebut the strong presumption of effectiveness" and that Mr. Ross did not meet this burden. Accordingly, it held that Mr. Ross's ineffective assistance of trial counsel claim was procedurally barred because it could have been raised on direct appeal.

¶ 20 On appeal to us, Mr. Ross argues that his trial counsel was ineffective for failing to raise the defense of extreme emotional distress, and that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. He also argues that the post-conviction court abused its discretion in denying his motions requesting that the court appoint counsel to assist him in seeking post-conviction relief.

4. *Gardner v. State*, 2010 UT 46, ¶ 55, 234 P.3d 1115 (internal quotation marks omitted).

5. *Alliant Techsystems, Inc. v. Salt Lake Bd. of Equalization*, 2012 UT 4, ¶ 17, 270 P.3d 441.

6. *Glenn v. Reese*, 2009 UT 80, ¶ 6, 225 P.3d 185 (internal quotation marks omitted).

7. See *Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150.

¶ 21 Below, in Part I, we discuss the potential procedural bar to Mr. Ross's claim of ineffective assistance of trial counsel. We note that this claim is properly before us only if we have first determined that Mr. Ross's appellate counsel was ineffective for failing to raise it on direct appeal.

¶ 22 Accordingly, in Part II, we consider whether the post-conviction court erred in granting summary judgment to the State on Mr. Ross's ineffective assistance of appellate counsel claim. We conclude that disputed issues of material fact preclude summary judgment on this claim. And because the ineffective assistance of appellate counsel claim is the gateway to the otherwise procedurally barred trial counsel claim, in Part III, we decline to reach the trial counsel claim.

¶ 23 Finally, in Part IV, we consider whether the court erred in denying Mr. Ross's requests for counsel. Although we conclude that the court did not abuse its discretion in denying Mr. Ross's initial requests for counsel, we anticipate that, on remand, if Mr. Ross re-files his motion to appoint counsel, his motion would be well founded.

I. MR. ROSS'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM IS PROPERLY BEFORE US ONLY IF WE FIRST CONCLUDE THAT MR. ROSS'S APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE IT ON DIRECT APPEAL

¶ 24 The PCRA provides that "a person who has been convicted and sentenced for a criminal offense may file an action ... for post-conviction relief to vacate or modify the conviction or sentence" upon the ground that "the petitioner had ineffective assistance of counsel in violation of the United States Constitution or Utah Constitution." [8] "But even claims relating to ineffective assistance of counsel may be procedurally barred under the PCRA." [9] Indeed, "no post-conviction relief is available for a claim that 'was raised or addressed at trial or on appeal' or that 'could have been but was not raised at trial or on appeal.' " [10] Nonetheless, "if a claim in a post-conviction petition could have been but was not raised at trial or on appeal, such a failure is *not* barred if the failure to raise the claim was due to ineffective assistance of counsel." [11] Accordingly, to determine whether counsel was ineffective for failing to raise an issue on appeal, "we examine the merits of the omitted issue." [12] Finally, when making a claim under the PCRA, the petitioner bears the burden of establishing ineffective assistance of appellate counsel.[13]

¶ 25 Mr. Ross's claim that his trial counsel was ineffective "could have been but was not raised" on appeal.[14] Thus, under the PCRA, we are precluded from assessing whether Mr. Ross's trial counsel was ineffective unless we first determine that Mr. Ross's failure to raise this claim on direct appeal "was due to ineffective assistance of [appellate] counsel." [15] Accordingly, Mr. Ross's claim that his appellate counsel was ineffective is intertwined with and dependent upon his claim that his trial counsel was ineffective. In other words, to determine whether appellate counsel's failure to raise trial counsel's ineffectiveness was itself due to ineffective assistance of counsel, we must "examine the merits" of the claim of ineffective assistance

8. Utah Code § 78B–9–104(1)(d).

9. *Johnson v. State,* 2011 UT 59, ¶ 10, 267 P.3d 880.

10. *Id.* (quoting Utah Code § 78B–9–106(1)(b)–(c)).

11. *Id.* ¶ 11 (alteration omitted) (emphasis added) (internal quotation marks omitted).

12. *Carter v. Galetka,* 2001 UT 96, ¶ 48, 44 P.3d 626 (internal quotation marks omitted).

13. *See Benvenuto v. State,* 2007 UT 53, ¶ 16, 165 P.3d 1195 (explaining that a petitioner must "demonstrate that the failure to raise that ground was due to ineffective assistance of counsel" (internal quotation marks omitted)); *Fernandez v. Cook,* 870 P.2d 870, 877 (Utah 1993) (recognizing that the petitioner "bears the burden of proving his claim of ineffective assistance of counsel").

14. *See* Utah Code § 78B–9–106(1)(c).

15. *See id.* § 78B–9–106(3).

of trial counsel.[16] But we note that, under the PCRA, we may examine the merits of that claim "only to the extent required to address" the ineffective assistance of appellate counsel claim.[17]

## II. BECAUSE GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON MR. ROSS'S INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIM, THE POST–CONVICTION COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE STATE ON THIS CLAIM

¶ 26 As discussed above, Mr. Ross's claim regarding trial counsel's ineffectiveness is procedurally barred by the PCRA unless we first conclude that appellate counsel's failure to raise that issue on direct appeal was "due to" appellate counsel's ineffectiveness. Accordingly, below, we examine—without deciding—the merits of Mr. Ross's ineffective assistance of trial counsel claim.[18] From there, we consider whether appellate counsel was ineffective for failing to raise that claim.

### A. Mr. Ross's Claim of Ineffective Assistance of Trial Counsel

¶ 27 Mr. Ross claims that his trial counsel's failure to raise the affirmative defense of extreme emotional distress under section 76–5–202 of the 2003 Utah Code [19] (Aggravated Murder Statute) was outside of the range of professionally competent assistance. The applicable provision of the Aggravated Murder Statute in effect at the time of Mr. Ross's trial provided that "[i]t is an affirmative de-

fense to a charge of aggravated murder or attempted aggravated murder that the defendant caused the death of another or attempted to cause the death of another ... under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." [20] This affirmative defense reduced a charge of aggravated murder to murder and a charge of attempted aggravated murder to attempted murder.[21]

¶ 28 We have not elaborated on the standard required to prove this affirmative defense under the Aggravated Murder Statute. But a similar provision in section 76–5–203 of the 2003 Utah Code (Murder Statute), which was in effect at the time of Mr. Ross's trial, provided that "[i]t is an affirmative defense to a charge of murder or attempted murder that the defendant caused the death of another or attempted to cause the death of another ... under the influence of extreme emotional distress for which there is a reasonable explanation or excuse," [22] such that respective charges would be reduced to manslaughter or attempted manslaughter.[23] And in interpreting this defense, we have indicated that the fact finder must determine whether (1) subjectively, the defendant committed the killing while under the influence of extreme emotional distress, and (2) objectively, a reasonable person would have experienced an extreme emotional reaction and loss of self-control under the circumstances.[24]

¶ 29 When claiming extreme emotional distress, a defendant must present only a minimum threshold of evidence to establish

16. *See Carter*, 2001 UT 96, ¶ 48, 44 P.3d 626.

17. *See* Utah Code § 78B–9–106(4).

18. *See* Utah Code § 78B–9–106(4) (permitting us to examine the merits of the trial counsel claim "only to the extent required to address" the appellate counsel claim).

19. This section of the Utah Code has since been revised to eliminate the extreme emotional distress defense; accordingly, throughout this opinion, we will cite to the 2003 version of the code in effect at the time of Mr. Ross's trial.

20. Utah Code § 76–5–202(3)(a)(i) (2003).

21. *Id.* § 76–5–202(3)(d).

22. *Id.* § 76–5–203(4)(a)(i).

23. *Id.* § 76–5–203(4)(d).

24. *See State v. Shumway*, 2002 UT 124, ¶ 9, 63 P.3d 94; *State v. Bishop*, 753 P.2d 439, 471 (Utah 1988) (plurality opinion), *overruled on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994); *see also* Utah Code § 76–5–203(4)(c) (2003) (stating that "the reasonable belief of the actor ... shall be determined from the viewpoint of a reasonable person under the then existing circumstances"); *id.* § 76–5–202(3)(c) (providing the same standard for the determination under the Aggravated Murder Statute).

the affirmative defense.[25] Thus, a "defendant's burden to demonstrate that the factual record supports an affirmative defense instruction is relatively low."[26]

¶ 30 Mr. Ross argues that his trial counsel should have raised a defense based on extreme emotional distress—specifically, that counsel should have argued at trial that Mr. Ross committed the crimes while overwhelmed with feelings of rage, jealousy, and betrayal after finding that Ms. Christensen had spent the night with another man. He contends that "[t]he record suggests that extreme emotional distress was the defense most likely available under the circumstances of the case," and that "[u]nder the circumstances, it makes no sense for trial counsel to forego the ... defense which would have mitigated the potential conviction of aggravated murder and attempted aggravated murder." Further, he argues that "[t]he record contains no explanation for counsel's failure to raise the defense that would support a finding that it was a reasonable strategy."

¶ 31 We note that Mr. Ross did not claim actual innocence, mistaken identity, self-defense, or any other defense that would have undermined or conflicted with the extreme emotional distress defense. Further, the extreme emotional distress defense does not appear to undermine or conflict with any of trial counsel's tactics. Indeed, Mr. Ross notes in his brief that "trial counsel did not make any opening argument, did not cross examine most of the State's witnesses, did not provide any affirmative evidence or testimony explaining why Mr. Ross did what he did, [and] failed to request jury instructions."

¶ 32 Further, the trial record suggests that the defense likely would have been available to Mr. Ross. The trial record shows that Mr. Ross and Ms. Christensen had a romantic relationship, which was known to others.

Ms. Christensen's father testified that Mr. Ross and Ms. Christensen had dated, and Mr. May testified that he knew Mr. Ross had been Ms. Christensen's boyfriend.

¶ 33 And the record provides support for Mr. Ross's claim that he became upset after arriving at Ms. Christensen's home and finding that she had spent the night with Mr. May. When he arrived at Ms. Christensen's home, she answered the door wearing a top and shorts, then went back to the bedroom to get Mr. May, who appeared wearing only pajama bottoms. Mr. May testified that "the mood changed a little bit where like at first when he came in he was asking questions, and then once he pulled out the gun, the situation became a lot more intense." Before and after pulling out the gun, Mr. Ross asked Ms. Christensen repeatedly to tell Mr. May about her sexual relationship with Mr. Ross. And immediately before pushing Ms. Christensen into the bedroom and shooting her, Mr. Ross told Mr. May, "I can't let her hurt you like she hurt me." These facts may have been sufficient to satisfy the "relatively low" burden necessary to establish the affirmative defense of extreme emotional distress,[27] such that the court would have been obligated to give a jury instruction on the defense if it had been presented.[28]

¶ 34 But counsel did not raise the defense and request the jury instruction. Further, it is unclear whether counsel attempted to investigate the extent of Mr. Ross's relationship with Ms. Christensen, the depth of his attachment to Ms. Christensen, or his feelings or emotional state at the time of the crime. Indeed, the evidence presented at trial about the relationship between Mr. Ross and Ms. Christensen is limited and comes from witnesses for the prosecution. We note that the documents Mr. Ross filed in his PCRA action suggest that there may have been additional information available about

---

25. *State v. Drej*, 2010 UT 35, ¶ 15, 233 P.3d 476 ("The Utah rule requires that the prosecution disprove the existence of affirmative defenses beyond a reasonable doubt once the defendant has produced some evidence of the defense." (internal quotation marks omitted)); *see also* UTAH CODE § 76–1–501 to –502 (providing that when a defendant has presented evidence of an affirmative defense, the State is required to negate that defense beyond a reasonable doubt).

26. *State v. White*, 2011 UT 21, ¶ 22, 251 P.3d 820.

27. *See id.* ¶ 22.

28. *See State v. Low*, 2008 UT 58, ¶ 25, 192 P.3d 867.

his relationship with Ms. Christensen and his emotional state when he committed the crime, but it is unclear whether trial counsel attempted to investigate or discover such information.

¶ 35 On the other hand, the post-conviction court concluded that statements made during the in-chambers conference following the trial but preceding the verdict demonstrated that trial counsel had a strategic reason for not raising the defense and that Mr. Ross agreed to this strategy. During this in-chambers conference, trial counsel stated, "There was no manslaughter defense raised based on any extreme emotional disturbance because of—because of evidentiary problems as are known to Mr. Ross and myself." Following extended remarks by trial counsel, the district court judge asked Mr. Ross, "[I]s that, in fact, the conversation and the strategy that you and [trial counsel] have decided on in this case?" Mr. Ross replied, "Yes, your honor." From the remarks made during the in-chambers conference, the post-conviction court concluded that "the trial record conclusively demonstrates that the petitioner's trial counsel's decision not to raise the 'extreme emotional distress' affirmative defense was not only strategic but was specifically agreed to by the petitioner," such that it was appropriate to grant summary judgment to the State on this issue.

¶ 36 The remarks made by trial counsel during the in-chambers conference are confusing and could call into question whether counsel had a strategy in declining to raise the extreme emotional distress defense, what the strategy might have been, whether Mr. Ross was in agreement with counsel's decision, and whether counsel's decision was reasonable. Indeed, if trial counsel was referring to the extreme emotional distress defense under the Aggravated Murder Statute, his statements during the in-chambers conference might indicate that he misunderstood the governing law and how it would apply to Mr. Ross's situation.

¶ 37 Specifically, trial counsel stated that there was no defense raised "based on any extreme emotional disturbance." This state-

ment is not consistent with the language of the Aggravated Murder Statute in effect at the time of Mr. Ross's trial. The Aggravated Murder Statute provided that "[i]t is an affirmative defense ... that the defendant caused the death of another or attempted to cause the death of another ... under the influence of extreme emotional *distress* for which there is a reasonable explanation or excuse." [29] The statute did not refer to "extreme emotional disturbance."

¶ 38 Further, trial counsel stated that "[t]here was no *manslaughter* defense raised based on any extreme emotional disturbance." (Emphasis added.) Mr. Ross was charged with aggravated murder and attempted aggravated murder. The Aggravated Murder Statute provided for an affirmative defense based on extreme emotional distress, but this affirmative defense only reduced a charge of aggravated murder to murder and a charge of attempted aggravated murder to attempted murder.[30] It would not reduce either of Mr. Ross's charges to manslaughter. And although the Murder Statute provided an affirmative defense based on extreme emotional distress that could reduce charges of murder and attempted murder to manslaughter or attempted manslaughter,[31] because Mr. Ross was not charged with murder or attempted murder, this defense would not have been available to him.

¶ 39 Moreover, Mr. Ross's Opposition Motion creates further confusion about what trial counsel meant when he referred to a "manslaughter defense raised based on any extreme emotional disturbance." In responding to the State's motion for summary judgment, in which the State argued that the in-chambers conference was sufficient grounds for granting its motion, Mr. Ross acknowledges that "[t]he record reflects that Petitioner did agree to not raise a 'manslaughter defense based on any extreme emotional disturbance,'" but states that this was because "counsel had informed [him] that the mental evaluations were holding him

---

**29.** Utah Code § 76–5–202(3)(a)(i) (2003) (emphasis added).

**30.** *Id.* § 76–5–202(3)(d).

**31.** *Id.* § 76–5–203(4)(d).

of sound mind, and that the evidence of the case precluded raising that defense." And he goes on to say that "[r]espondents are completely off point here: manslaughter and its 'emotional disturbance defense' is not what was claimed" to be ineffective assistance of counsel in his petition, but rather "the issue was [section] 76–5–202(3)(a)(i), 'under the influence of extreme emotional distress for which there is a reasonable explanation or excuse.'"

¶ 40 Mr. Ross's Opposition Motion then refers to a "manslaughter defense" contained in sections 76–5–205(1)(c) and 76–5–205.5(1)(a) of the Utah Code, which he states is "defined there as 'a delusion attributable to a mental illness.'" Mr. Ross then explains that "he was never informed [that] he could claim this defense," and was instead "told that the mental evaluations would not support it."

¶ 41 And Mr. Ross's Opposition Motion creates further confusion about what trial counsel meant when he referred to "evidentiary problems" that precluded the defense. The Opposition Motion states that the "[t]he record reflects that Petitioner did agree to not raise a 'manslaughter defense based on any extreme emotional disturbance,' but states that this was because 'counsel had informed [him] that the mental evaluations were holding him of sound mind, and that the evidence of the case precluded raising that defense.'" Although the record is unclear, we note that this could have been a reference to information that might have undermined a theory that Mr. Ross had committed the murders while under extreme emotional distress. But as we have discussed, the extreme emotional distress defense requires the fact finder to determine only if (1) subjectively, the defendant committed the killing while under the influence of extreme emotional distress, and (2) objectively, a reasonable person would have experienced an extreme emotional reaction and loss of self-control under the circumstances.[32] The focus is on the defendant's emotional state—not his mental health. Thus, Mr. Ross's mental evaluations would be irrelevant to this determination.

¶ 42 Finally, following several statements made by trial counsel, including the statements described above, the district court judge asked Mr. Ross, "[I]s that, in fact, the conversation and the strategy that you and [trial counsel] have decided on in this case?" And Mr. Ross replied, "Yes, your honor." From this, the post-conviction court determined that Mr. Ross had agreed to the strategy of not raising a defense based on extreme emotional distress. But as described above, the remarks made by counsel might undermine the notion that trial counsel had explained the appropriate law governing the defense to Mr. Ross before he had agreed to any course of action, and Mr. Ross's Opposition Motion raises further questions regarding what Mr. Ross understood about counsel's decision and the reason for it. Because the district court did not ask Mr. Ross any specific questions regarding his understanding of the situation, the in-chambers conference provides no information about whether Mr. Ross consented to forego a defense based on extreme emotional distress.

B. Because There Are Genuine Issues of Material Fact Regarding Whether Appellate Counsel Investigated the Trial Counsel Claim, the Post–Conviction Court Erred in Granting Summary Judgment to the State on the Appellate Counsel Claim

¶ 43 Having discussed the merits of Mr. Ross's claim of ineffective assistance of trial counsel, we consider whether the post-conviction court erred in granting summary judgment to the State on Mr. Ross's claim of ineffective assistance of appellate counsel for failing to raise the trial counsel claim. Because it remains unclear whether appellate counsel investigated Mr. Ross's potential claim of ineffective assistance of trial counsel—and further, what that investigation might have uncovered—we conclude that the district court erred in granting summary judgment to the State on this issue as a matter of law.

¶ 44 As an initial matter, "[a] defendant has the right to the effective assis-

32. *See supra* ¶ 28 & n. 23.

tance of appellate counsel under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." [33] And "[a]s is the case in challenges to the effectiveness of trial counsel, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must prove that appellate counsel's representation fell below an objective standard of reasonable conduct and that the deficient performance prejudiced [him]." [34] Thus, "to demonstrate ineffective assistance of appellate counsel, a petitioner must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." [35]

¶ 45 But appellate counsel's failure to raise an obvious, meritorious claim does not automatically render his assistance ineffective. Indeed, "the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. . . . [C]ounsel frequently will 'winnow out' weaker claims in order to focus effectively on those more likely to prevail." [36] On the other hand, appellate counsel "may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." [37] Thus, to determine whether counsel was ineffective for failing to raise an issue on appeal, "we examine the merits of the omitted issue" [38] and determine whether appellate counsel's failure to raise it was "objectively unreasonable." [39]

¶ 46 In this case, Mr. Ross did not contest that he killed Ms. Christensen and shot Mr. May. Thus, his defense was limited to the issue of whether he should be convicted of aggravated murder and attempted aggravated murder for the crimes. And the trial

record indicates that a defense based on extreme emotional distress may have been the most obvious and reasonable strategy to prevent Mr. Ross from being convicted for aggravated murder and attempted aggravated murder. Indeed, in our prior opinion in this case, in determining that the killing of Ms. Christensen and the shooting of Mr. May were part of the same "course of conduct" or "criminal episode," we noted that "[t]he trial evidence—most prominently Mr. Ross's interrogation of Ms. Christensen regarding the recent sexual activity of Ms. Christensen and Mr. May—leaves little doubt that Mr. Ross's jealousy and anger over Ms. Christensen's spurning of his affections" motivated him to commit the murder and the attempted murder.[40] Thus, we acknowledged that the trial evidence clearly established a link between the crimes, Mr. Ross's heated emotions, and his relationship with Ms. Christensen.

¶ 47 Specifically, the trial record shows that Mr. Ross had a romantic relationship with Ms. Christensen and that he became upset after arriving at her home and seeing that it appeared that she had spent the night with another man. Before and after pulling out his gun, Mr. Ross demanded repeatedly that Ms. Christensen tell Mr. May about her sexual relationship with Mr. Ross. Further, before pushing Ms. Christensen into the bedroom and shooting her, Mr. Ross told Mr. May, "I can't let her hurt you like she hurt me."

¶ 48 And, as we have discussed, the record is unclear regarding whether there was a legitimate reason to forego the defense that may have been most likely to succeed in Mr. Ross's situation. The defense of extreme emotional distress does not appear to conflict with any other trial strategy that counsel pursued. Further, the record is unclear re-

33. *Taylor v. State*, 2007 UT 12, ¶ 16, 156 P.3d 739.

34. *Lafferty v. State*, 2007 UT 73, ¶ 39, 175 P.3d 530 (alteration omitted) (internal quotation marks omitted).

35. *Kell v. State*, 2008 UT 62, ¶ 25, 194 P.3d 913 (internal quotation marks omitted).

36. *Carter v. Galetka*, 2001 UT 96, ¶ 48, 44 P.3d 626 (internal quotation marks omitted).

37. *Id.* (internal quotation marks omitted).

38. *Id.* (internal quotation marks omitted).

39. *Benvenuto v. State*, 2007 UT 53, ¶ 24, 165 P.3d 1195 (internal quotation marks omitted).

40. *State v. Ross*, 2007 UT 89, ¶ 32, 174 P.3d 628.

garding whether counsel elected not to raise the defense because he believed that foregoing the defense would be advantageous to Mr. Ross in some way. And although the State may have been able to disprove the defense after it was raised, the facts on the trial record may have been sufficient to satisfy Mr. Ross's "relatively low" burden to establish the affirmative defense of extreme emotional distress,[41] such that the court would have been obligated to give a jury instruction on the defense if it had been presented [42] and the State would have borne the burden of disproving the defense beyond a reasonable doubt.[43]

 ¶ 49 But the post-conviction court concluded that the in-chambers conference "conclusively demonstrates" that "trial counsel's decision not to raise the 'extreme emotional distress' affirmative defense was not only strategic but was specifically agreed to by" Mr. Ross, such that a claim of ineffective assistance of trial counsel on this basis could not have been obvious from the trial record. We disagree. We cannot conclude that the record could have conveyed anything "conclusive" to appellate counsel about trial counsel's strategy. Instead, we conclude that genuine issues of material fact preclude summary judgment on this issue.

¶ 50 First, even if appellate counsel read the transcript of the in-chambers conference, trial counsel's statement that he had a "strategy" for not raising a defense based on extreme emotional distress would not have made it unreasonable to investigate the potential merits of the ineffective assistance of counsel claim. And second, as discussed above, the statements made during the in-chambers conference were confusing. If trial counsel was referring to the extreme emotional distress defense, his statements during the in-chambers conference indicate that he may have misunderstood the law in effect at the time of Mr. Ross's trial. Specifically, he refers to the defense as "extreme emotional *disturbance*," rather than "extreme emotional *distress*," and he refers to the defense as a "*manslaughter* defense," even though the de-

fense available to Mr. Ross could not have reduced his charges to manslaughter or attempted manslaughter. (Emphases added.) Further, in light of the low burden on defendants to establish an affirmative defense and the evidence available in the trial record supporting a potential claim of extreme emotional distress, trial counsel's statement about evidentiary problems precluding the defense indicates that counsel may have misunderstood something about the nature of the defense.

¶ 51 These are red flags in the trial record that should have sparked some investigation by appellate counsel. And appellate counsel may have been ineffective for either failing to investigate them, or, after investigating, failing to bring a claim of ineffective assistance of trial counsel. But the record does not tell us whether such an investigation was conducted or what such an investigation might have uncovered. The record is simply silent on that matter. Thus, we cannot determine whether appellate counsel's failure to raise the trial counsel claim was "objectively unreasonable." And we are in no position to speculate on these matters in this appeal. Instead, it is precisely this confusion—on the disputed, genuine issues of whether an investigation occurred and on what it might have uncovered—that requires remand on the appellate counsel claim. We conclude that genuine issues of material fact preclude summary judgment on this issue. Accordingly, we conclude that the post-conviction court erred in granting the State's motion for summary judgment on Mr. Ross's claim regarding appellate counsel, and we remand for further proceedings on that claim.

III. BECAUSE IT IS UNCLEAR WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AN INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM, THE POST–CONVICTION COURT ERRED IN FINDING THAT THE TRIAL COUNSEL CLAIM WAS PROCEDURALLY BARRED

 ¶ 52 As discussed above, Mr. Ross's claim that trial counsel was ineffective is

41. *See White*, 2011 UT 21, ¶ 22, 251 P.3d 820.

42. *See Low*, 2008 UT 58, ¶ 25, 192 P.3d 867.

43. *See Drej*, 2010 UT 35, ¶ 15, 233 P.3d 476.

procedurally barred under the PCRA unless we first determine that "the failure to raise [the claim] was due to ineffective assistance of [appellate] counsel." [44] In other words, the appellate counsel claim is the gateway to the otherwise procedurally barred trial counsel claim. But we cannot determine whether appellate counsel's failure to raise the trial counsel claim was "due to" appellate counsel's ineffectiveness unless we can determine whether appellate counsel was ineffective. And as discussed above, that is a determination we cannot make based upon the record before us. Thus, because we cannot determine whether appellate counsel was ineffective, we cannot determine whether Mr. Ross's trial counsel claim is procedurally barred.

¶ 53 Accordingly, we remand this issue to the post-conviction court to conduct an evidentiary hearing on the issue of whether appellate counsel was ineffective. If—and only if—the court decides that appellate counsel was ineffective for failing to raise the trial counsel claim, then the merits of the trial counsel claim will be properly before it. The court should then consider the merits of Mr. Ross's ineffective assistance of trial counsel claim. In that case, an additional evidentiary hearing will be necessary to resolve the ambiguities in the in-chambers conference, settle the factual disputes regarding the conference that Mr. Ross raises in his Opposition Motion, and determine whether trial counsel investigated Mr. Ross's relationship with Ms. Christensen and his emotional state while committing the crime or if counsel had some basis for declining to make such an investigation.

IV. ALTHOUGH THE POST-CONVICTION COURT DID NOT ABUSE ITS DISCRETION IN DENYING MR. ROSS'S INITIAL REQUESTS FOR COUNSEL, WE CONCLUDE THAT THE MATTER IS SUFFICIENTLY COMPLEX THAT, ON REMAND, A RENEWED MOTION WOULD BE WELL FOUNDED

¶ 54 When Mr. Ross filed his Petition, he also filed a motion requesting that the post-

conviction court appoint pro bono counsel for him under section 78B-9-109 of the Utah Code. And following the court's decision to partially dismiss his claims and grant him leave to file an amended petition, Mr. Ross filed a second motion to appoint pro bono counsel along with his amended petition. But the post-conviction court denied both of these motions as "premature." At that time, the court reasoned that because the State "ha[d] not yet submitted a responsive pleading that addresses [Mr. Ross's] surviving claims, the [c]ourt has not determined whether an evidentiary hearing is necessary." Further, because the court had not yet reviewed the merits of Mr. Ross's surviving claims, the court stated that "the complexity of the . . . remaining claims and the need for the appointment of counsel for the proper adjudication of such claims is uncertain at this time."

¶ 55 But in a footnote to its ruling denying Mr. Ross's request for counsel, the court noted that it would not be "unwilling to order the appointment of pro bono counsel" later in the proceedings. The court reiterated that Mr. Ross "may certainly renew his motion to appoint counsel at a more appropriate time, such as, if and when the Court determines that an evidentiary hearing on his petition for post-conviction relief is necessary following the submission of the [State's] pleading." After the State submitted its responsive pleading, however, Mr. Ross did not file a third motion to appoint counsel.

¶ 56 On appeal, Mr. Ross argues that "[t]he post-conviction court's refusal to grant [his] request[ ] for counsel was an abuse of discretion because he met the qualifications to justify the appointment of counsel." Specifically, he contends that he had requested an evidentiary hearing and that his claims involved complex issues of law and fact that required the assistance of counsel to develop. Although we conclude that the district court did not abuse its discretion at the time it denied Mr. Ross's motions, we note

**44.** *Johnson v. State*, 2011 UT 59, ¶ 11, 267 P.3d 880 (first alteration in original) (internal quota- tion marks omitted).

that because the resolution of this case will require at least one evidentiary hearing, and because it involves complicated issues of law and fact, we anticipate that a renewed motion for appointment of counsel would be well founded on remand.

¶ 57 We review the denial of a motion to appoint counsel under the PCRA for an abuse of discretion.[45] We "will find that a . . . court has abused its discretion only if [its] decision was beyond the limits of reasonability."[46] In other words, "[a]n abuse of discretion occurs if the . . . court's actions are inherently unfair or if we conclude that no reasonable person would take the view adopted by the . . . court."[47]

¶ 58 "[T]here is no statutory or constitutional right to counsel in a civil petition for post-conviction relief."[48] But the PCRA grants a post-conviction court discretion to grant an indigent petitioner's request for pro bono counsel if the court concludes that the circumstances of the case merit such an appointment.[49] Indeed, the PCRA explains that "the court may, upon the request of an indigent petitioner, appoint counsel on a pro bono basis to represent the petitioner in the post-conviction court or on post-conviction appeal."[50] Specifically, the PCRA states that, "[i]n determining whether to appoint counsel, the court shall consider . . . (a) whether the petition or the appeal contains factual allegations that will require an evidentiary hearing; and (b) whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication."[51]

¶ 59 In this case, although the post-conviction court declined to appoint pro bono counsel to aid Mr. Ross in pursuing his ineffective assistance of counsel claims, we conclude that

the court did not abuse its discretion in doing so. Because the State had not yet filed its response to Mr. Ross's Petition, it was not inappropriate for the court to conclude that "the complexity of [Mr. Ross's] remaining claims and the need for the appointment of counsel for the proper adjudication of such claims [was] uncertain at [that] time." Accordingly, we cannot conclude that the court's decision to decline to appoint counsel at that time was "beyond the limits of reasonability"[52] or "that no reasonable person would take the view adopted by the . . . court."[53]

¶ 60 Nonetheless, on remand, the resolution of this case will require at least one evidentiary hearing. Further, as discussed in this opinion, at this point in the proceedings, it is evident that Mr. Ross's claims involve complicated issues of law and fact that will require the assistance of counsel for proper adjudication. Under these circumstances, we anticipate that, on remand, a renewed motion to appoint counsel would be well founded.

## CONCLUSION

¶ 61 Regarding Mr. Ross's claim that his appellate counsel was ineffective, we conclude that disputed issues of material fact preclude summary judgment. Because of that, we cannot determine whether appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. Thus, we cannot determine whether the trial counsel claim is procedurally barred. Accordingly, we conclude that the post-conviction court erred in granting summary judgment to the State on both of these issues. Finally, although we conclude that the court did not abuse its discretion in denying Mr.

---

45. See *Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150; *see also Pennsylvania v. Finley*, 481 U.S. 551, 555–56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

46. *State v. Arguelles*, 2003 UT 1, ¶ 101, 63 P.3d 731 (internal quotation marks omitted).

47. *Id.* (alteration omitted) (internal quotation marks omitted).

48. *Hutchings*, 2003 UT 52, ¶ 20, 84 P.3d 1150.

49. *See* Utah Code § 78B–9–109(1).

50. *Id.*

51. *Id.* § 78B–9–109(2).

52. *See Arguelles*, 2003 UT 1, ¶ 101, 63 P.3d 731 (internal quotation marks omitted).

53. *See id.* (alteration omitted) (internal quotation marks omitted).

Ross's initial requests for counsel, we anticipate that, on remand, a renewed motion to appoint counsel would be well founded.

¶ 62 For the foregoing reasons, we reverse the post-conviction court's grant of summary judgment to the State and remand with instructions for the court to conduct an evidentiary hearing on the issue of whether Mr. Ross's appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. And if the court determines that appellate counsel was indeed ineffective, the court should conduct an additional evidentiary hearing to determine whether trial counsel was ineffective for failing to raise a defense of extreme emotional distress.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.